EUGENE W. HILL, for himself and in a Representative Capacity, etc., Plaintiff and Appellant, v. THE CITY OF BILLINGS, Earle Knight, Mayor, et al., Defendant and Respondent.

No. 9902.
328 Pac. (2d) 1112.
Submitted June 9, 1958. Decided August 11, 1958.

Sandall, Moses & Cavan, Billings, for appellant.

Charles F. Moses, and John J. Cavan, Billings, argued orally for appellant.

Charles B. Sande, Billings for respondent.

Charles B. Sande, Billings, argued orally for respondent.

MR. JUSTICE ANGSTMAN:

This action was brought to have determined by declaratory judgment the meaning of chapter 28, Laws of 1957, as it affects the salary of police officers.

That chapter amended section 11-1832, R.C.M. 1947, so that it now reads as follows:

"That from and after July 1, 1957, there shall be paid to each duly confirmed member of the police department of cities of the first and second class of the state of Montana, a minimum wage for a daily service of eight (8) consecutive hours' work, of at least three hundred and fifty dollars ($350.00) minimum per month for the first year of service, and thereafter of at least three hundred and fifty dollars ($350.00) minimum per month plus one per cent (1%) of said minimum base monthly salary three hundred and fifty dollars ($350.00) for each additional year service up to and including the twentieth year of such additional service."

Immediately prior to the passage of chapter 28 the minimum salary was $280 per month (chapter 47, Laws of 1951); and immediately prior to 1951, it was $200 per month (chapter 294,

Laws of 1947); and prior to 1947 it was $160 per month (chapter 55, Laws of 1935, and chapter 96, Laws of 1939).

Both Chapter 294, Laws 1947, and Chapter 47, Laws 1951, provided the minimum monthly wage "for the first year of service" and thereafter at least the minimum monthly wage "plus one ($1.00) dollar per month for each additional year of service up to and including the tenth year of such additional service."

Chapter 28, Laws of 1957, as above noted, changed the minimum to $350 per month and instead of providing for an increase of $1 per month for each additional year of service provided for one percent of the minimum base salary of $350 per month for each additional year of service up to the twentieth year of such additional service.

In construing the statute we must ascertain and give effect to the intention of the Legislature if possible. Section 93-401-16. And we are governed by the rule that statutes must be "liberally construed with a view to effect their objects and to promote justice." Section 12-202.

We are also mindful of the rule that we must ascertain the legislative intent from the language used by it and we may not insert in the statute what has been omitted, or omit what has been inserted. Section 93-401-15.

With these statutory rules of construction in mind, we shall then proceed to ascertain the meaning of chapter 28.

The purpose of that chapter was of course to increase the wages of police officers that they might in some measure keep pace with the cost of living trend and to reward the more experienced men by paying them a higher salary.

The pleading and evidence show that a proposed budget was submitted by the chief of police to the budget committee of the City of Billings for the year commencing July 1, 1957, containing the salary schedule for plaintiff and all other members of the Billings police department.

The proposed budget gave the then salary of each member, the number of years of service and requested as a budget al-

lowance for each member, his then salary added to the result obtained by multiplying the number of years of prior service by one per cent of the base minimum monthly salary of $350.

As an example, for a member whose salary on July 1, 1957, was $400 per month and who had nine years of prior service a request for $431.50 was made which was computed by adding to the $400 the figure obtained by multiplying $3.50 (being one per cent of the minimum base salary) by nine.

The city council rejected the request and fixed as a preliminary budget the exact amount of the members then salary, except in a few instances an insignificant amount was added thereto.

On August 13 the city council passed an ordinance appropriating money for the payment of the salaries in accordance with the preliminary budget approved by it.

At this point it should be said that all of the salaries were then in excess of the minimum of $350 fixed by chapter 28. It should also be noted that chapter 28 states that the minimum salary shall be at least $350 per month. The salary cannot be less than $350 per month but it may be more than that. There is nothing in chapter 28 that would indicate a purpose on the part of the Legislature to reduce the existing minimum salary of any police officer or to otherwise change it so long as it amounted to $350 per month or more. It said the minimum salary shall be at least $350 per month which plainly indicates that it may be more than that, as was the case with all police officers in Billings.

The Legislature did however make a substantial change so far as the wages are to be increased because of longevity of service. Prior laws allowed an increase of $1 per month for each year of prior service. The amended act changed that to $3.50 monthly for each year of prior service.

The principal question involved on this appeal is whether the $3.50 increase for each year of prior service was intended to apply to service before the enactment of the amendment

as contended by plaintiff or whether it only applies to service after the enactment of chapter 28 as contended by the city.

To adopt the city's contention we would be obliged to say that for the first year chapter 28 was in effect it would have accomplished nothing so far as its provisions relate to prior service. There is the further question of whether the added wages because of longevity of service should be added to the actual current salary, or to the $350 minimum.

It is plain from a reading of the statute that the added ■ wages must be added to the actual current salary and not to the minimum of $350 each month.

The act is exactly what its title indicates viz.: "An Act * * * Relating to a Minimum Wage to be Paid to Police Officers in Cities of the First and Second Class; Providing the Amount of Such Minimum Wage; Providing for an Annual Percentage Increase; and Repealing All Acts and Parts of Acts in Conflict Herewith."

In effect the city contends that to apply the increased wages for prior service to service before July 1, 1957, renders the Act retroactive or gives the Act an interpretation contrary to its terms.

We do not agree with the city's contention in this respect. ■■ It is true that the wages provided for by chapter 28 are payable only after July 1, 1957, but this does not mean that the Legislature did not intend to consider service prior to that date in computing what the wages shall be.

In other words it is competent for the Legislature to use antecedent facts as the measuring device in fixing salaries to be paid after the enactment of the statute.

In 82 C.J.S. Statutes, section 412, p. 980, it is said: "* * * a statute does not operate retroactively merely because it relates to antecedent events, or because part of the requisites of its action is drawn from time antecedent to its passing * * *".

The case of City of Antonio v. Baird, Tex. Civ. App. 1948, 209 S. W. (2d) 224, 225, is a case where the facts are parallel with those here and there the court stated that, "in fixing

said wage the Legislature could consider the length of service rendered before the effective date of the Act, and provide that the more experienced men should receive a higher rate of pay.''

Another case reaching the same result. under analogous facts is that of People ex rel. Albright v. Board of Trustees of Firemen's Pension Fund, 103 Colo. 1, 82 Pac. (2d) 765, 118 A.L.R. 984, and see to the same general effect Perry v. O'Farrell, 120 Colo. 561, 212 Pac. (2d) 848; Bedford v. White, 106 Colo. 439, 106 Pac. (2d) 469; Earle v. Froedtert Grain & Malting Co., 197 Wash. 341, 85 Pac. (2d) 264; Bates v. McLeod, 11 Wash. (2d) 648, 120 Pac. (2d) 472; Silver King Coalition Mines Co. v. Industrial Commission, 2 Utah (2d) 1, 268 Pac. (2d) 689; Cox v. Hart 260 U. S. 427, 43 S. Ct. 154, 67 L. Ed. 332; American Federation of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 Pac. (2d) 912; Olivas v. Weiner, 127 Cal. App. (2d) 597, 274 Pac. (2d) 476.

We think it is not reasonable to suppose that the Legislature intended merely to increase the wages by the nominal sum of $2.50 per month for the first years service after July 1, 1957, and by the maximum of $50 per month after the lapse of twenty years. That would have been an increase of $30 per year after one year of service, $60 for the second, $90 for the third and an increase of $600 for the twentieth year of prior service. Such a nominal increase does not comport with the policy of the Legislature as shown by its other acts.

In 1955, by chapter 237, the Legislature increased the salary of state officers. The lowest increase awarded was $1,500 per year and the highest $2,500 per year.

It does not seem reasonable to assume that it intended to increase the wages of police officers by only $30 per year. Rather we think what the Legislature intended to do was to recognize the status of police officers according to the length of service in the past and to reward the more experienced by paying them a higher wage scale. This is what the language of the Act indicates. In other words, the Legislature drew no

distinction between years of service performed before July 1, 1957, and those performed after that date.

The trial court ruled that since plaintiff and each of the members of the Billings police force are receiving wages in excess of $350 per month plus one percent annual increase for each year of service that they had no cause to complain.

This assumes that the minimum salary of each police officer was fixed at precisely the sum of $350 per month. What the Legislature said is that it should be at least that much. It could be and in fact is more with all the members of the Billings police force. Interpretations of the statute would, as the city contends, make the Act of the Legislature meaningless so far as it relates to longevity of service and render its efforts to improve the wage schedule of police officers futile except only as it affected those, if any, receiving as wages less than $350 per month.

The city contends that as an aid in the interpretation of the statute it should be noted that the city has levied the maximum tax allowable under section 84-4701 and that it should be assumed that the Legislature did not intend to increase the wages beyond what the city could meet with tax levies.

Answer to this argument is found in chapter 217, Laws of 1957, which provides in substance that cities shall share in the license tax therein provided for the retail sale of liquor to be used "for Law Enforcement and the Regulation and Control of the Sale of Liquor and the Use Thereof."

The judgment is reversed and the cause remanded with directions to enter judgment in favor of plaintiff's contentions in accordance with the views herein stated.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE CASTLES:

I dissent. I agree that the longevity pay must be applied for all prior years of service, but believe that so long as an officer receives the $350 minimum plus longevity that the dis-

cretion lies with the City Council. The fact that an officer's present salary is higher than that figure should not mean that the legislature intended to add to it necessarily. The act established a minimum for all cities of the class and was not designed to increase pay in individual cases where the officer was already above the minimum.

MR. JUSTICE ADAIR (dissenting):

In City of Philipsburg v. Porter, 121 Mont. 188, 193, 190 Pac. (2d) 676, 679, Mr. Justice Gibson, speaking for this court, said: "Section 3, Revised Codes of Montana 1935 [now Section 12-201, R.C.M. 1947], provides: 'No law contained in any of the codes or other statutes of Montana is retroactive unless expressly so declared.' This statute is declaratory of the general rule of construction that, ' "There is always a presumption that statutes are intended to operate prospectively only, and * * * ought not to have a retroactive operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, * * *" 25 R.C.L. 787.' State ex rel Mills v. Dixon (Educational Bonds Case), 68 Mont. 526, 219 Pac. 637, 638.

"The statute which declares this rule forbids the consideration of extrinsic aids to the construction of a law in regard to its retroactive or prospective operation, wherein it commands that the law must not be held to be retroactive 'unless expressly so declared.' Mills v. State Board of Equalization, 97 Mont. 13, 33 Pac. (2d) 563. In Chapter 62 there is to be found no language that, either expressly or by implication, gives retroactive effect to the Act. It seems vain to consider the construction of the statute in this regard, however, for, if given retroactive operation the statute would be in violation of the constitutional prohibition against the enactment of a law impairing the obligation of contracts. If it were possible, which it is not, to construe the Act as retroactive, such reading thereof should be avoided under the well-known rule that where two constructions of a statute are possible, one of which would

render the Act unconstitutional, and the other sustain its validity, the latter interpretation must be adopted.''

In Chapter 28, Laws of 1957, there is no language that, either expressly or by implication, gives retrospective effect to the Act. Section 12-201, R.C.M. 1947, prohibits the consideration of extrinsic aids to the construction of the section as to its retroactive or prospective operation. In my opinion the construction given the Chapter 28, Laws of 1957, by the majority opinion herein violates the express mandate of Section 12-201, supra.