657 P.2d 469

**UNIVERSITY OF UTAH HOSPITAL on Behalf of William HARRIS and Karen Harris, husband and wife, parents of Sara Harris, an infant, who are medical indigents, Plaintiff-Appellant,**

v.

**Richard PENCE, Clerk; Twin Falls Board of County Commissioners; and Twin Falls County, Defendants-Respondents.**

No. 14004.

Supreme Court of Idaho.

Sept. 16, 1982.

Rehearing Denied Feb. 3, 1983.

Dean Williams, Blackfoot, for plaintiff-appellant.

Lloyd J. Webb, of Webb, Burton, Carlson, Pederson & Paine, Twin Falls, for defendants-respondents.

McFADDEN, Justice.

The instant appeal arises from an action initiated by the filing of a complaint by University of Utah Hospital and Medical Center, on behalf of William T. Harris and Karen F. Harris, parents of Sara Harris, a minor child. The actual nature of the complaint was that of a collateral attempt to appeal a decision of the Board of County Commissioners for Twin Falls County refusing to grant the plaintiff benefits under the provisions of I.C. §§ 31–3401 *et seq.* and 31–3501 *et seq*, as those references relate to the aid to the medically indigent. The district court granted the defendants' motion for summary judgment of dismissal of the plaintiff's claim. We affirm.

The complaint as well as the affidavits and deposition filed below establish the following facts for purposes of review.

On October 25, 1975, Sara Harris, the daughter of the Harrises, was born prematurely, with attendant serious physical complications. The necessary facilities for medical treatment of the child being unavailable in Idaho, the Harrises' doctor ordered that the child be immediately transferred to the University of Utah Hospital and Medical Center in Salt Lake City, Utah. The child received medical treatment at the hospital through the 25th of February, 1976. The statement for the medical treatment of the child over this period of time totalled $42,117.78.

On November 5, 1976, the hospital, on behalf of the Harrises, filed an application for aid for the medically indigent with the former Twin Falls County Clerk, H.A. Lancaster. Mr. Lancaster failed to file a certificate with the Twin Falls Board of County Commissioners, as required in situations of medical indigency.

On January 28, 1977, the plaintiff filed the complaint seeking payment of $42,-117.78 in medical bills. Attached to the complaint was the verified application of William T. Harris, which stated the following:

"WILLIAM T. HARRIS and KAREN F. HARRIS, husband and wife, own no real estate nor any interest therein. They have equity in a 1974 Datsun automobile on which they have paid $800 and which has a balance owing thereon of $2,000. They also own a 1963 Dodge Dart automobile which is valued at not more than $100. They also own a 1962 Honda which is not in running condition and stove for which they paid $50.00. None of the said assets have a market value of any consequence. Include washer and dryer machine equity $250.00, balance of $350.00.

"WILLIAM T. HARRIS is employed by the Twin Falls Soil Conservation service in the Ag Department and his average monthly wage is $920.50—that the applicants, WILLIAM T. HARRIS and KAREN HARRIS are unable to receive or expect financial assistance from their parents, neither of whom have the means to render any aid."

Reference is also made to a document titled "Monthly Living Expenses." The document reflects that the Harrises after-tax income was $710.00 per month and that they were incurring expenses in the amount of $707.00 per month.

The defendants moved to dismiss the action, raising the following objections, (1) the failure of the plaintiff to timely file an application for medical indigent benefits; (2) the allegation that the Harrises were not medically indigent; and (3) the failure of the plaintiff to exhaust its administrative remedies. Subsequently, the defendants moved for summary judgment of dismissal. The motion was based in pertinent part upon the deposition taken of William T. Harris on March 2, 1977. The deposition disclosed that prior to the birth of their daughter, the Harrises combined income was in excess of $1,150.00 per month, they had accumulated $2,000.00 in a savings account, and incurred approximately $620.00 per month in expenses. The deposition also discloses that as of March 2, 1977, Mr. Harris was earning $1,400.00 a month with his after-tax income totalling $903.00 a month.

On November 25, 1980, the plaintiff also moved for summary judgment on its claim.

Both motions for summary judgment were argued to the district court on December 1, 1980. Two days later the district court granted the defendants' motion for judgment of dismissal. In so ordering, the court reasoned that the plaintiff's application for medical indigency benefits was untimely and that the parents were not medically indigent within the meaning of the applicable law. The district court also opined that the plaintiff hospital was not a party which could lawfully claim relief under the provisions of I.C. § 31–3401 *et seq.* and 31–3501 *et seq.*

The plaintiff thereafter perfected the instant appeal. Three issues are presented on appeal: (1) did the district court err in ruling that the application for medical indigency benefits was untimely; (2) did the district court err in ruling that the Harrises were not medically indigent, and (3) did the

district court err in its ruling that the University of Utah Hospital could not file a claim on behalf of the Harrises for medical indigency benefits. Given our determination that the district court correctly ruled that the application for medical indigency benefits was untimely, the second and third issues presented on appeal need not be discussed.

The district court relied upon I.C. § 31–3504 (1976) in its ruling that the appellant was barred from pursuing its claim. The provision reads:

"An application for or on behalf of a medically indigent person receiving emergency medical services may be made *any time within forty-five (45) days following the admission* of said person to the hospital furnishing said care. If a person becomes medically indigent subsequent to admission to a hospital or subsequent to receiving treatment by a hospital, an application for the person, or on his behalf, shall be made within thirty (30) days of the time the person becomes medically indigent. The chargeable county or counties shall be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent." (Emphasis added.)

This statutory provision became effective July 1, 1976 (1976 Idaho Sess.Laws, ch. 121), a time subsequent to the admission and release of the Harrises' child from the hospital.

The appellant contends that the 1976 version of I.C. § 31–3504 is inapplicable.[1] Rather, appellant points point to the 1974 version of I.C. § 31–3504, which was in effect at the time the medical treatment of the child, as being the applicable law in this case. Under this earlier provision an indigent receiving emergency medical treatment could apply for county aid within one year of discharge from the hospital, and the instant application would have been timely.

Retroactive application of the 1976 version of I.C. § 31–3504 to the instant situation would run contrary to general principles of law disfavoring such application. *See* 2 Sutherland, Statutory Construction, § 41.04 (1973). Consonant with this view, I.C. § 73–101 states that "[n]o part of these compiled laws is retroactive, unless expressly so declared." Similarly, there is general agreement in the case law of this jurisdiction that there must be a clear expression of legislative intent of retroactivity before a statute will be given such effect. *Baker v. Baker,* 100 Idaho 635, 603 P.2d 590 (1979); *Edwards v. Walker,* 95 Idaho 289, 507 P.2d 486 (1973); *Application of Forde L. Johnson Oil Co.,* 84 Idaho 288, 372 P.2d 135 (1962); *In re Pahlke,* 56 Idaho 338, 53 P.2d 1177 (1936). Applied retroactively, the 1976 version of I.C. § 31–3504 would have required the application to have been made by April 10, 1976, some two and a half months before the effective date of the law. Clearly, such retroactive application would unfairly penalize the appellant for failure to comply with a statute of which it had no notice. This court could not countenance such a result inasmuch as there is no expression of legislative intent that the 1976 version of I.C. § 31–3504 be applied retroactively. Nonetheless, it does not follow that the prior version of the statute would remain in effect after July 1, 1976. From that date forward the appellant had fair notice of the new requirements of when an application for medical indigency benefits had to be filed and had forty-five days in which to make such application.

An examination of the relevant case law from other jurisdictions indicates that a statute is not made retroactive merely because it draws upon facts antecedent to its enactment for its operation. *Holt v. Morgan,* 128 Cal.App.2d 113, 274 P.2d 915 (1954); *Hill v. City of Billings,* 134 Mont. 282, 328 P.2d 1112 (1958); *Earle v. Froed-*

1. It is to be noted that the appellant does not contend that the Harrises became medically indigent within thirty days of the time of the filing of the application. Rather, the application relates back to the time of the hospitaliza-tion of Sara Harris. Thus, we are only concerned with the applicability of the forty-five day limitation contained in the 1976 version of I.C. § 31–3504.

tert Grain & Malting Co., 197 Wash. 341, 85 P.2d 264 (1938); Lewis v. City of Medina, 13 Wash.App. 501, 535 P.2d 150 (1975). As the California Supreme Court reasoned in Holt v. Morgan, supra, "[t]he contention [as here made by the appellant] is based on a misunderstanding of 'retroactive' as a legal concept." 274 P.2d at 917. In this regard, it is to be observed further that there is almost universal agreement that when a statutory period of limitation is amended to reduce the limitation period, the party whose right accrues before the effective date of the amendment cannot be heard to complain if he is given the full time allowed for action according to the terms of the amended statute from and after the effective date of the amended statute. Olivas v. Weiner, 127 Cal.App.2d 597, 274 P.2d 476 (1954); Greenhalgh v. Payson City, 530 P.2d 799 (Utah 1975); Day & Night Heating Co. v. Ruff, 19 Utah 2d 412, 432 P.2d 43 (1967); O'Donoghue v. State, 66 Wash.2d 787, 405 P.2d 258 (1965); Earle v. Froedtert Grain & Malting Co., supra. In Olivas v. Weiner, supra, the statutory time within which a child could file a claim for prenatal injuries against an individual for his tortious conduct was shortened from until the time the child reached majority to six years from the date of birth. The appellant, who apparently had been injured during the course of his birth, brought suit within the prior statutory period, but more than twelve years after the statutory period was shortened. In ruling that the suit was not timely, the court made the following observations:

"It has repeatedly been held that the Legislature may reduce a statute of limitations and that the new period applies to accrued causes of action provided a reasonable time is allowed within which to assert the cause. Estate of Whiting, 110 Cal.App. 399, 294 P. 502; Estate of Venners, 119 Cal.App. 417, 419, 6 P.2d 544; Thompson v. County of Los Angeles, 140 Cal.App. 73, 76, 35 P.2d 185; Norton v.

City of Pomona, 5 Cal.2d 54, 65, 53 P.2d 952; Kline v. San Francisco U. School Dist., 40 Cal.App.2d 174, 176, 104 P.2d 661, 105 P.2d 362; Scheas v. Robertson, 38 Cal.2d 119, 125, 238 P.2d 982; Crothers v. Edison Elec. Co., C.C., 149 F. 606; Terry v. Anderson, 96 U.S. 628, 24 L.Ed. 365.

. . . .

A statute is not made retroactive merely because it draws upon facts existing prior to its enactment. Thus changes in procedural law have been held applicable to existing causes of action. The effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future. National Automobile & Cas. Ins. Co. v. Downey, 98 Cal.App.2d 586, 590, 220 P.2d 962; Argues v. National Superior Co., 67 Cal. App.2d 763, 778, 155 P.2d 643; Earle v. Froedtert Grain & Malting Co., 197 Wash. 341, 85 P.2d 264." 274 P.2d at 478, 479.

Similarly, in Earle v. Froedtert Grain & Malting Co., supra, the court stated that "[t]he limitation prescribed by the new statute commenced when the cause of action was first subjected to the operation of the statute, that is, upon its effective date." 85 P.2d at 266.[2]

The appellant argues that the foregoing authority is inapplicable in light of the court's decision in the early case of Cook v. Massey, 38 Idaho 264, 220 P. 1088 (1923). In Cook, the judgment from which the appeal was taken was dated April 25, 1921, and service of notice of appeal was filed July 15, 1921. Nine days after the judgment was entered, a new statute became effective restricting the period within which an appeal could be perfected to twenty days from the date of judgment. The court disagreed with the argument that the appellant only had twenty days from the effective date of the new statute within which to perfect his appeal, and held that

---

2. Attention is drawn by respondents in their brief to an unpublished opinion in the case of The Children's Hospital v. Planting, District Court of the Fourth Judicial District of the State of Idaho, Ada County, Hon. Gerald F. Schroeder, District Judge (case no. 59455 April

1, 1977). In that opinion, Judge Schroeder considered the precise question now before this court. An excellent discussion of the applicable principles of law is contained in that opinion, and Judge Schroeder's reasoning has been closely followed in this opinion.

the new time limit for perfection of an appeal could not be applied retroactively. 38 Idaho at 269, 220 P. at 1089.

In our view, the *Cook* decision is no longer good law. First, the decision rests upon the mistaken assumption that the question before the court is retroactive versus prospective application. As we have seen from the authority previously cited, this simply is not the case. Secondly, the opinion in *Cook* rests upon two nineteenth century California cases, i.e., *Melde v. Reynolds,* 120 Cal. 234, 52 P. 491 (1898), and *Pignaz v. Burnett,* 119 Cal. 57, 51 P. 48 (1897), which apparently have been overruled in California, witness *Olivas v. Weiner, supra.* Accordingly, the case of *Cook v. Massey, supra,* is overruled to the extent it is in conflict with our holding today.

█ In summary, we conclude that the proper measure of the time limitation period begins to run from July 1, 1976, the effective date of the 1976 version of I.C. § 31–3504. This means that the forty-five day period would have run August 15, 1977, approximately three months before the appellant's application. Thus, the district court did not err in holding that the instant application for medical indigency benefits was untimely.

Order of summary judgment of dismissal affirmed. Costs to respondents.

DONALDSON, J., concurs.

SHEPARD, J., concurs in the result.

Submitted by McFADDEN, J., prior to his retirement on August 31, 1982.

BAKES, Chief Justice, dissenting:

The majority is applying I.C. § 31–3504, as amended July 1, 1976, retroactively in direct contravention to the Idaho statute that no law should be retroactively applied unless the legislature so declares. I.C. § 73–101; *see Lincoln Cty. v. Fidelity & Dep. Co. of Md.,* 102 Idaho 489, 632 P.2d 678 (1981); *In re Pahlke,* 56 Idaho 338, 53 P.2d 1177 (1936). A law is retroactive when it operates upon rights which have been acquired. *See Arnold v. Woolley,* 95 Idaho

604, 514 P.2d 599 (1973). Under I.C. § 31–3504, as it existed prior to the effective date of the 1976 amendment, the Harrises acquired the right to file for medical indigent benefits within one year from February 25, 1976, the date of release from the hospital. Therefore, to apply I.C. § 31–3504, as amended July 1, 1976, to limit the Harrises' filing period to forty-five days from the effective date of the amendment, affects their previously acquired right to file for benefits within one year from the date of discharge from the hospital.

In retroactively applying the 1976 amendment to I.C. § 31–3504, the majority also retroactively overrules *Cook v. Massey,* 38 Idaho 264, 220 P. 1088 (1923). When the plaintiffs filed this action for medical indigent benefits, they were entitled to and did act consistently with the law as set forth in *Cook v. Massey, supra.* Weighing the factors to be considered in determining whether to apply that opinion prospectively or retrospectively, *i.e.,* the purpose of the new rule, reliance on prior decisions and the effect of the new rule on the administration of justice, *see Jones v. Watson,* 98 Idaho 608, 570 P.2d 284, 286 (1977), *quoting People v. McDaniel,* 16 Cal.3d 156, 127 Cal.Rptr. 467, 545 P.2d 843, 848 (1976); *Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 539 P.2d 566 (1975), I can only conclude that to deprive the Harrises of their right to file for benefits by overruling retroactively the decision in *Cook v. Massey, supra,* ignores their right to rely on existing law and causes them undue hardship.

Finally, the majority relies primarily on a rule adopted in other jurisdictions which, as I understand it, is as follows: When a statutory period of limitation is amended to reduce the limitation period, the new limitation period will be applied as of the effective date of the amendment even to those actions which accrue before the effective date of the amendment. The majority fails, however, to address two recent cases that contain language which is expressly inconsistent with the above stated rule. *In Stoner v. Carr,* 97 Idaho 641, 550 P.2d 259 (1976), this Court stated that "[t]he statute

of limitation in effect when the right of action is deemed to accrue defines that statutory period unless the legislature provides otherwise." *Id.* at 643, 550 P.2d at 261. Similarly, in *Martin v. Clements,* 98 Idaho 906, 575 P.2d 885 (1978), this Court stated that "if the cause of action accrued before [the effective date of the amendment], then the statute of limitation effective on that date of accrual would be the applicable statute of limitation." *Id.* at 908, 575 P.2d at 887. Thus, the majority opinion has the effect of overruling not one, but three cases, to the extent that they are inconsistent: *Cook v. Massey, supra,* is expressly overruled, and *Stoner v. Carr, supra,* and *Martin v. Clements, supra,* are overruled by implication.

My concern over both the retroactive application of I.C. § 31–3504, and the wide-sweeping implications of overruling the relevant portions of the above named cases, compels me to dissent.

BISTLINE, Justice, concurring with BAKES, Chief Justice.

I am in complete agreement with Chief Justice Bakes' position that I.C. § 73–101 precludes retroactive application of the amended version of I.C. § 31–3504. This result is reinforced by I.C. § 73–106, which provides: "Accrued rights and pending actions not affected.—No action or proceeding commenced before the compiled laws take effect, *and no right accrued,* is affected by their provisions, but the proceedings therein must conform to the requirements of the compiled laws as far as applicable." (Emphasis added.) No one questions that the appellants' right to file for medical indigency benefits accrued on February 25, 1976—the date of discharge of their child, Sara Harris, from the medical facility in Utah, and that, at the time of its accrual, that right extended for one full year. The majority, however, confuses the concept of retroactivity as applied to an accrued right. Quoting *Holt v. Morgan,* 128 Cal.App.2d 113, 274 P.2d 915 (1954) for the proposition that retroactivity is a misunderstood legal concept, the majority itself misinterprets the *Holt* opinion as evidenced by a subsequent statement made by that court:

"There could only be retroactive application where prior to the enactment ... *some right* ... [had] been obtained." 274 P.2d at 918 (emphasis added). In this manner the *Holt* court realized application of a statute is retroactive if it affects accrued rights.

BISTLINE, Justice, dissenting.

A beginning point for analysis of the majority opinion is its bare and unsupported statement that as of July 1, 1976, "the appellant had fair notice of the new requirements of when application for medical indigency benefits had to be filed and had forty-five days in which to make such application." As the author of the majority opinion concedes, this postulate was adopted from District Judge Schroeder's opinion in *Children's Hospital v. Planting,* No. 59455, (4th Dist.Ct., April 1, 1977), which similarly involved an action to recover medical indigency benefits. In his opinion, however, Judge Schroeder, showed an awareness for reality. What he actually wrote was that the plaintiffs in that case (plaintiffs and appellants in this) "have fair notice, *so far as anybody is aware of statutory law,* and they have an opportunity to act within the limitations established." (Emphasis added.) Judge Schroeder's opinion quoted the following passage from *Greenhalgh v. Payson City,* 530 P.2d 799 (Utah 1975):

"It is well established that the legislature may reduce a period of limitations and apply a new and shorter period to previously accrued causes of action, *so long as a reasonable time is allowed to bring such an action;* and that the effect of the new statute commences upon the effective date of the statute." 530 P.2d at 803 (footnotes omitted) (emphasis added).

Judge Schroeder did not, according to my reading, discuss the fair notice question, other than to astutely imply (as it seems to me that he did) that few people are aware of statutory law—by which I would suppose that he especially meant drastic changes in statutory law. Certainly, however, Judge Schroeder, unlike the majority of this Court, was aware that changes in statutory law may be a trap for the unwary. Simi-

larly, Judge Schroeder, whose opinion was also an order denying a motion to dismiss predicated upon grounds of untimeliness, failed to address the reasonable time issue—a key to the Utah court's statement. The majority opinion of this Court accepts without discussion both that forty-five days is a reasonable time to bring an action and that appellants had fair notice of the change in the law. Both unwarranted and unsupported assumptions are, however, necessary to the Court's reasoning in order to reach a conclusion which upholds the denial of benefits.

The majority has impermissibly amended the 1976 amendment to I.C. § 31–3504 in order to suit its own view as to what the legislature might have done in order to avoid or limit the statutory duty imposed upon counties to care for the medically indigent. In doing so, the Court similarly chooses to ignore that the legislature, in not making any provision for claims against the county which had accrued or would accrue prior to the amendment's effective date of July 1, 1976, was obviously under the impression that accrued claims would remain subject to the limitations which were in effect at the time the right giving rise to those claims had accrued. Most persons would so reason; hence, there is no need for the majority to speculate and legislate. The legislature in avoiding any change that might alter existing claims chose the wiser and more just approach.

The Utah court in *Greenhalgh, supra,* correctly stated the law that *a legislature* can reduce a period of limitations even as to an existing claim or cause of action, but doing so is conditional on its providing a reasonable time to bring such an action. In this case the legislature did not do so. The majority of the Court, however, rushes in to fill the breach with its own provision—one which self-servingly defeats the appellants' claim. Nor does the majority reason around the holding of the Utah court—although it cites its *Greenhalgh* opinion.

It is helpful to note an earlier Utah case relied upon for the *Greenhalgh* holding

which, after all, was a 3–2 decision. In *Toronto v. Sheffield,* 118 Utah 460, 222 P.2d 594 (1950) the Utah court also wrote in terms of what *the legislature* could do— how far it could go—in reducing the time limitation in which an action could be brought as applied to a then existing claim. In this case, again, it must be repeated that the Idaho legislature did not even purport to reduce the time limitation as to existing and accrued claims. Just how a court can do that, when it is at once apparent that the legislature carefully avoided any attempt at shortening the time on accrued claims, will forever be a mystery—other than that earlier opinions authored by some members of the Court have clearly demonstrated an antipathy toward the concept of huge hospital bills being paid by Idaho's counties—especially to Utah hospitals.[1]

FAIR NOTICE

The majority avoids discussing just how the appellants were given "fair notice" of the 1976 amendment. If my powers of recollection continue to serve me, not one member of this Court has professed to have known of the 1976 amendment in question prior to our preparation for the oral argument. Yet, it is said that these lay appellants had "fair notice of the new requirements" as of July 1, 1976, when the amended version of I.C. § 31–3504 became effective. It is unclear whether this concept of "fair notice" originates in the cliche that "ignorance of the law is no excuse," or in some other judicial fiat that as frequently serves injustice as it does justice. Even were we to hold the Harrises to an exemplary standard of laypersons' awareness of the law, had they checked the applicable law at the time of their daughter's discharge from the hospital, inquiry would have informed them of a one-year statute of limitation on medical indigency claims. How they received or should have acquired knowledge of the change in the law is a proposition which is difficult to comprehend. I know of no principle of reason or justice which requires daily inquiry into existing statutes of limitation.

1. Fortunately, a 1982 amendment, 1982 Idaho Sess.Laws, Chap. 190 § 3, is aimed at provid- ing a formula for a statewide sharing of medical indigency claims.

## REASONABLE OPPORTUNITY

Had the legislature purported to make the shortened time applicable to accrued rights—which it did not do—and had it enacted as legislation that which the Court now establishes by judicial fiat, it would be difficult to uphold forty-five days as a reasonable time within which to bring a claim.

Although it is uncontroverted that legislatures have the power to shorten or lengthen statutes of limitation, the majority fails to recognize that courts in turn will make a determination of the reasonableness of the new time allowed to assert a claim when applied retroactively to a previously accrued right. Indeed, several cases cited by the Court in support of its conclusion prescribe such an examination. In *Olivas v. Weiner*, 127 Cal.App.2d 597, 274 P.2d 476 (1954), the court qualified its application of a new statute of limitation to an accrued cause of action: "It has repeatedly been held that the Legislature may reduce a statute of limitations *and that the new period applies to accrued causes of action provided a reasonable time is allowed within which to assert the cause.*" 274 P.2d at 478 (emphasis added). In that instance, a new limitation of six years was held not unreasonable. After adopting almost identical language as found in *Olivas,* the Supreme Court of Utah in *Greenhalgh v. Payson City,* 530 P.2d 799, determined a new one-year limitation to be reasonable. *See also Day & Night Heating Co. v. Ruff,* 19 Utah 2d 412, 432 P.2d 43 (1967) (new one-year limitation held reasonable); *Earle v. Froedtert Grain & Malting Co.,* 197 Wash. 341, 85 P.2d 264 (1938) (new six-month limitation held reasonable).

The lack of any holding by the majority, or any discussion whatever, regarding the reasonableness of the time period allowed for filing, in contravention of the very authority cited in support of its position, compels me to address the question, albeit in dissent. I am wholly unable to see that a forty-five day statute of limitation is a reasonable amount of time to assert an accrued claim which at the time of its accrual was subject to a one-year limitation.[2] Forty-five days is not a long time in most circumstances. It is an exceedingly short period of time in which to by happenstance learn that the legislature has without fanfare shortened a one-year statute to a bare forty-five days. It cannot be said as a matter of law that the appellants' filing on November 5, 1976, approximately two and one-half months after the expiration of the forty-five day period as creatively applied by the Court, is unreasonable. Certainly, four months is not an excessive amount of time to allow a plaintiff who thinks he has one year to discover a change in the law and file a claim or notice. The Court's opinion has impermissibly, but effectively, foreclosed the appellants' opportunity to recover the benefits statutorily due medical indigents, yet no fault has been found against them.

---

2. The 120-day limitation of the Tort Claims Act is frequently condemned as unreasonable. To further shorten it to fifteen days, as to existing claims, would be the equivalent of the majority's cutting 365 days to forty-five days, and hence "acceptable"—a proposition even proponent's of the 120-day limitation would see as extremely doubtful.