670 P.2d 520

**Rick MITCHELL, Petitioner,**

v.

**AGENTS OF the STATE of Idaho, Judge Bail, Sheriff Chuck Palmer, et al, Respondents.**

**No. 15174.**

Supreme Court of Idaho.

Oct. 5, 1983.

Rick Mitchell, pro se.

William A. Von Tagen, Deputy Atty. Gen., Idaho State Tax Commission, Boise, for respondents.

HUNTLEY, Justice.

Petitioner, Rick Mitchell, is incarcerated in the Ada County jail by virtue of a contempt commitment issued upon his refusal to obey a writ of mandate ordering him to file with the State Tax Commission returns for taxes measured by income for the years 1980 and 1981.

The record establishes that following issuance of a writ of mandate directing filing of state tax returns for those years, petitioner filed returns in which he entered zeros in the blanks calling for income information and deleted by interlineation from the certification the words "under Penalties of Perjury ..."

The trial court found the petitioner in contempt for failure to file a valid tax return and ordered him to be incarcerated until he files a proper return. A petition for writ of habeas corpus was filed with this court.

This court specially assigned the case to the Hon. J. Ray Durtschi, District Judge, to serve as a special master to determine whether a writ of habeas corpus should issue. We now adopt Judge Durtschi's memorandum decision (appended hereto as appendix A) as the opinion of this court. For the reasons set forth in that opinion, we hold that the application for writ of habeas corpus is accordingly denied.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

APPENDIX A

MEMORANDUM OPINION

This case has been referred to this Court for decision by the Idaho Supreme Court.

The Order of reference specified the issue to be determined as follows: "... this case is hereby specially assigned to the Honorable J. Ray Durtschi for further hearings to determine whether a Writ of Habeas Corpus should issue." (underlining mine).

The facts giving rise to the assignment as reflected in the record are briefly summarized. Petitioner was found in contempt of court for failing to obey a writ of mandate ordering him "to file with the State Tax Commission returns for taxes measured by income for the years 1980 and 1981 pursuant to Idaho Code sec. 63–3030, on or before April 15, 1983." The contempt commitment ordered petitioner "incarcerated in the Ada County Jail until he files a valid income tax return."

Pursuant to the writ of mandate, petitioner had filed returns in which he entered zeros in the blanks calling for income information and deleted by interlineation from the certification the words "Under Penalties of Perjury..."

The District Judge in finding petitioner to be in contempt of the writ of mandate found and concluded that:

a return not containing any information from which a tax may be computed is not a return under Idaho law. A return with any portion of the declaration of perjury provision struck out or removed is not a return.

The petition, answer of the State Tax Commission on behalf of the respondent, and reply of the petitioner, establish the above facts without controversy.

The determination of whether a Writ of Habeas Corpus should issue in this case requires consideration and reconciliation of three areas of law: (1) habeas corpus procedure; (2) writ of mandate procedure; and (3) constitutional ramifications.

## HABEAS CORPUS PROCEDURE

I assume at the outset that the Supreme Court by its reference intended that in determining whether to issue the Writ, I follow the Habeas Corpus statute (I.C. 19–4201 et seq.) and the case law governing such proceedings. While I note in this regard that the habeas corpus statute does not specifically provide for the use of the Order to Show Cause Procedure, I have found in dealing with applications for the Writ in the past that it is an effective procedural device to enable the respondent to either grant the relief immediately without resort to further proceedings or aid the court in determining whether the factual allegations of the application and the petitioner's response to the respondent's answer to the Order to Show Cause will support the issuance of the writ. I assume that the Supreme Court intended the same purpose to be served by the use of the order to show cause in this proceeding.

I think it is clear not only from the language of the reference but also under the statute that the Supreme Court had not determined that the Writ should issue. If it had, it could have issued the Writ and made it returnable before any district court or district judge (I.C. 19–4203).

To justify issuance of the Writ the application must show that the petitioner is unlawfully imprisoned or restrained of his liberty and "in what the alleged illegality consists." (I.C. 19–4201, 19–4202, 19–4215).

In its prior decisions the Idaho Supreme Court has consistently held that habeas corpus being a collateral attack upon a judgment, unless the contrary appears in the record, it would be presumed that all proceedings were according to law (*Ex parte Allen,* 31 Idaho 295, 170 P. 921; *In re Blades,* 59 Idaho 682, 86 P.2d 737); and that the petition must allege facts showing the petitioner to be entitled to relief or the petition can properly be denied without hearing (e.g., see *Larson v. State,* 91 Idaho 908, 435 P.2d 248; *Mahaffey v. State,* 87 Idaho 233, 392 P.2d 423; *Burge v. State,* 90 Idaho 473, 413 P.2d 451; *Wilson v. State,* 90 Idaho 498, 414 P.2d 465; *King v. State,* 91 Idaho 97, 416 P.2d 44; these cases are cited by way of example only and are not exhaustive). The same rule is applied by the Federal Courts under the Federal Habeas Corpus Statute (See 28 U.S.C.A. sec. 2242; *Ward v. Page,* 424 F.2d 491 (C.A.10) certio-

rari denied 400 U.S. 917, 91 S.Ct. 178, 27 L.Ed.2d 157; *Atkins v. State*, 386 F.2d 819 (C.A.10); *Martinez v. U.S.*, 344 F.2d 325 (C.A.10); and numerous other cases cited under note 18 of annotations under Sec. 2242, U.S.C.A.). This also appears to be the general rule throughout other States as exemplified by the following statement of the rule:

"A petition for writ of habeas corpus should contain a statement of the facts that constitute the illegal restraint, and failure to allege a ground of illegality precludes consideration thereof by the court. The statement should consist of direct averments of ultimate facts, as distinguished from conclusions of law, and the circumstances set forth must be such as to warrant the discharge of the prisoner in case they are established. In other words, to entitle the applicant to the writ, there must be at least a prima facie showing in the application that the detention or confinement is unlawful." (39 Am.Jur.2d 267, sec. 123).

Thus, only those allegations of the application which bear on the legality of petitioner's imprisonment and restraint need be considered. The pertinent allegations of the application may be identified as to general subject matter and grouped for convenience of consideration as follows: (1) denial of counsel in the writ of mandate and contempt proceedings; (2) failure to afford petitioner a full opportunity to be heard in the writ of mandate and contempt proceedings; and (3) attacks on the validity of the writ of mandate procedure and its use in this case.

## DENIAL OF COUNSEL

In Paragraph IX of the Fifth Defense of the Tax Commission's Answer to the application, it is alleged that

At each stage of the proceedings, Petitioner was informed by the district court that he had a right to counsel of his choice so long as counsel had been admitted before the Bar of the State of Idaho.

In his response to the Answer, petitioner admits those allegations, but asserts that he should be permitted to be represented by "counsel of choice" which he makes clear is not someone admitted to the practice of law in the State of Idaho.

This contention has been presented to various judges in this court in numerous cases, both tax cases and criminal cases, by members of what appears to be a concerted movement who contend that as "free and natural citizens" and "merchants and Traders at Law on a cash basis" they are not subject to statutory law, the jurisdiction of the courts, or the United States monetary system, and are entitled to be represented by non-attorney counsel of choice. These various contentions have been uniformly rejected in this court and to my knowledge none of those cases have been reversed by an appellate court. Judge Smith of this Court in a memorandum decision which carefully considered these contentions, including the right to lay "counsel of choice", rejected that contention, setting out case law in support of his position (*State v. Hallstrom*, Ada County Case No. 11321; see also *State v. Welsh*, Ada County Case No. 11051; *State v. Gibson*, Ada County Case No. 11110).

I see no reason why the same rule is not applicable to this case; therefore, I conclude that denial of lay counsel of choice in the writ of mandate and contempt proceedings did not render those proceedings invalid and hence does not render petitioner's imprisonment and restraint illegal.

## DENIAL OF FULL OPPORTUNITY FOR HEARING

The record of the writ of mandate proceeding (Ada County Case No. 80079), of which I take judicial notice, reflects that both parties filed motions for summary judgment which were argued before the court by both parties. The court issued its decision in the form of a written Memorandum Opinion (which is part of the record in the instant case as Exhibit F to the Answer to the Application). Nothing in the record or allegations of the application indicate

that petitioner was not afforded a full opportunity to be heard in that proceeding.

I assume the contention of the petitioner is based upon his request for a continuance of the show cause hearing held on May 19, 1983. Thereafter, on June 1, 1983, petitioner filed a Notice of New Matter and Demand for Time in which he alleged that he needed time to prepare contentions as to invalidity of giving Idaho Code 63–3030A retroactive effect. Thereafter, on June 22, 1983, a hearing was had on a contempt citation in which petitioner's contentions regarding retroactive application of the statute were addressed by the trial court and decided adversely to petitioner.

Because of the delays and continuances involved in the proceedings on contempt, the record reflects on its face that petitioner had ample time to prepare and present his contentions and that the judge hearing the contempt matter did consider and decide that issue.

In any case it appears to me as a matter of law that the decision of the judge hearing the contempt matter was correct on this issue.

■ Idaho Code 63–3030A is a remedial measure, and its application to individuals who had not filed returns which were past due at the time of the adoption of the statute is not invalid (*League v. Texas,* 184 U.S. 156, 22 S.Ct. 475, 46 L.Ed. 478 (1902); cf. *University of Utah Hospital v. Pence,* 104 Idaho 172, 657 P.2d 469 (1982); *Matter of Hidden Springs Trout Ranch, Inc.,* 102 Idaho 623, 636 P.2d 745 (1981)).

## WRIT OF MANDATE PROCEDURE

The most serious questions are presented by the petitioner's allegations concerning the writ of mandate procedure and his response to the writ of mandate. He alleges in substance that he has in fact complied with the writ of mandate by filing returns as required; even though, as he admits, the returns contained zeros in the blanks calling for income information and he obliterated a portion of the certification. He contends, in effect, that if the Tax Commission can control the contents of the returns through the writ of mandate, then the writ itself should be more specific in its directions to him. In this case the writ itself contained no specific directions as to the contents of the return. As noted, the writ directed only that petitioner "file returns for taxes measured by income for the years 1980 and 1981 pursuant to Idaho Code sec. 63–3030 . . . ."

Petitioner further contends that if the return is erroneous he should be prosecuted for perjury or for filing a fraudulent return, not be compelled to file another return. As to the interlineation of a portion of the verification clause on the returns, petitioner contends that:

> Zeros are the only entries that I can place on certain lines as, to the best of my knowledge, I have no income. . . . As far as obliterating of a portion of the verification is concerned, How can I sign something under penalty of perjury when I know it is in error. For example, I do not know what constitutes income. . . ."

Although not raised in the application, petitioner now contends in his response to the answer to his application that the writ of mandate proceeding violated his Fifth Amendment Right against self incrimination.

While mandamus as an extraordinary remedy and special proceeding has an ancient history, its use to compel the filing of tax returns is a recent development.

The legislature in providing for the use of a writ of mandate to compel the filing of tax returns (I.C. 63–3030A) obviously intended the statute to be read in pari materia to the general writ of mandate statute (I.C. 7–301 et seq.). The general statute is referred to in the tax statute in providing that "Proceedings upon such suits shall be in accordance with chapter 3, title 7, Idaho Code." (I.C. 63–3030A). Problems exist, however, in reconciling the two statutes.

Under the general writ of mandate statute the writ cannot be used if there is "a plain, speedy and adequate remedy in the ordinary course of law" (I.C. 7–303), and the issuance of the writ is discretionary and

not a matter of right (I.C. 7–302 *Hunke v. Foote,* 84 Idaho 391, 373 P.2d 322 (1962)). Under the general statute the writ is limited to compelling "the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station . . ." (I.C. 7–302). In that regard it is used only to compel performance of a clear legal duty, i.e., ministerial duty which does not involve the exercise of discretion (*Knudson v. Boundary County School Dist.,* 104 Idaho 93, 656 P.2d 753 (1982); *Allen v. Smylie,* 92 Idaho 846, 452 P.2d 343 (1969)). Entirely consistent with this limited scope of the writ, the general statute provides that it can be enforced by imprisonment "until the writ is obeyed." (I.C. 7–314). However, it seems clear to me that it is not contemplated that this extreme sanction be imposed unless the duty is clear and the writ is specific in its directions as to the duty to be performed.

In considering the use of the writ of mandate to compel the filing of tax returns under I.C. 63–3030A it seems important to me to determine whether the legislature intended this to be a discovery procedure or an enforcement of payment procedure. Those two purposes would involve different showings in support of issuance of the writ and a different form of writ. If this is a discovery procedure, the basic showing in support of the writ would only require a showing that the respondent probably had received income and that no return had been filed for the period in question, and the writ would only direct the filing of a return. If the procedure is an enforcement of payment procedure, the showing should be that the respondent had taxable income and owed a tax and the writ should require a return consistent with the findings of the court in support of its issuance.

It would appear that the use of the writ to compel the filing of tax returns was borrowed from Oregon (see ORS 314.365; *Department of Revenue v. McCann,* 293 Or. 522, 651 P.2d 717 (1982); *Department of Revenue v. Welch,* 293 Or. 530, 651 P.2d 721 (1982)). The Oregon Supreme Court has clearly construed its statute to be a discovery statute. In the *Welch* case the Court said:

> The department need not, as a precondition to requesting or compelling the filing of a return, prove that the person or entity did in fact receive taxable income and the amount of any tax liability. . . . The fact that the trusts reported substantial income on their 1977 returns and that Clarence Welch evidently received some income during 1978 is sufficient to justify the department's demand for the requested returns. (651 P.2d at 723).

Consistently in the *McCann* case the Court said:

> "The legislature evidently intended that where the department determines that an individual or entity may have earned income taxable under ORS Chapter 316, it can require the person or entity to file a return listing all income received." (651 P.2d at 719).

By way of further explanation of the purpose served by the statute, the *McCann* Court made these pertinent observations:

> Orderly and efficient administration of the tax laws necessitates the voluntary compliance and cooperation of this State's citizens. Defendant's contention that the department should be required to prove that he has earned taxable income and the amount of his tax liability before it can demand the filing of a return, although perhaps not unreasonable when viewed in the abstract, is without merit when viewed in context. In a state such as Oregon with a large number of taxpayers, many of whom have complex financial situations, just a few recalcitrants could effectively paralyze the department's administration of the tax laws if the system were as envisioned by defendant.

> There is evidence that defendant had income in 1974 and 1975, that he has operated a business in the ensuing years in question and that the business appeared to have customers who have had work performed at that place of business. We hold that the evidence presented by the department was sufficient to justify

its demand that defendant file the requested returns and that defendant's failure either to comply with the demand or to offer any substantial reason for his failure to do so justified the issuance of the peremptory writ of mandamus. (651 P.2d at 719–720).

I am satisfied that our Idaho legislation carried the same intent, i.e., that it is a discovery proceeding, not an enforcement of payment proceeding. To require a showing as a predicate to issuance of the writ that the taxpayer has earned taxable income and the amount of his tax liability would in effect render the filing of a return redundant and would duplicate the enforcement provisions provided by Idaho Code 63–3070.

Procedurally, I think it is also clear that the legislature did not intend the requirement of the general writ of mandate statute that there be no "plain, speedy and adequate remedy in the ordinary course of law" (I.C. 7–303) to apply to the use of the writ under I.C. 63–3030A. This is made clear in the following language from the statute: "Nothing in this section shall limit the remedies otherwise available to the State Tax Commission under this chapter or by any other laws of this state." The Oregon Supreme Court has given their statute the same construction. (*Department of Revenue v. McCann,* supra).

Pursuant to the mandamus proceeding in this case the Court found as a predicate to issuance of the writ that the petitioner "received gross wages for personal services from his employer of $16,585.92 and $19,586.76" for the two years in question, and that the returns he had theretofore filed provided "no information concerning income."

Unquestionably, these findings supported the issuance of the writ of mandate under the foregoing construction of the statute.

There remains for consideration petitioner's contentions that the writ violated his Fifth Amendment Right Against self incrimination and that he had in fact complied with the writ before he was found to be in contempt of the writ of mandate and imprisoned.

Under existing case law, the present showing of the petitioner is facially inadequate to raise a valid Fifth Amendment claim (*Department of Revenue v. McCann,* supra; *Department of Revenue v. Welch,* supra; *United States v. Carlson,* 617 F.2d 518 (9th Cir.1980)).

I find the petitioner's contentions concerning his obliteration of a part of the verification or certification to be duplicitous and to constitute pure sophistry. On the one hand the petitioner argues that if his return was false, he should have been prosecuted for perjury or for making a fraudulent return; but on the other hand he obliterates the certification or verification which would form the basis for such prosecution.

As to his allegations of lack of knowledge of what constitutes income, admittedly some areas of tax law are highly complex and technical. However, millions of taxpayers throughout the United States are faced each year with making the same or a comparable verification or certification. If they have complex tax problems they can always furnish the information to a tax expert and have the expert sign the return as the preparer. While the petitioner might lack sophistication as to all of the ramifications of the term "taxable income", I venture to assume that any young schoolboy knows what "wages" and "salaries" are, and that is what is called for on line 10 of the return. Where the "wages" are reflected in a W–2 form all the person needs to be able to do is read and write to copy those figures on his return.

All that a taxpayer who signs the complete verification or certification has to do to avoid prosecution for perjury or filing a false or fraudulent return is make an honest and reasonable effort to supply the information called for with a good faith and reasonable belief that it is accurate (*United States v. Moore,* 627 F.2d 830 (7th Cir. 1980)).

I find, therefore, that the filing of a return with the verification or certification mutilated or obliterated did not constitute

the filing of a return as required by the governing statute and as mandated by the court in the mandamus proceeding.

I reach a different conclusion, however, as to the information contained in the return. On this issue, the fact that I have already determined that the mandamus proceeding is a discovery process and not a proceeding to determine tax liability is pertinent. Pursuant to the discovery purpose, the writ of mandate properly directs only the filing of a return in the form required by the tax laws and regulations and does not purport to mandate the content of the return in terms of the information to be furnished. The writ issued in this case did not purport to control the discretion of the petitioner as to the contents of the return. Appropriately, under my construction of the statute, it directed petitioner only to file a return.

It is a known fact, of course, that there are people who survive without taxable income. It is also possible under the limited showing necessary to obtain the writ of mandate that persons with no tax liability might be required to file returns. Therefore, it cannot be found under my construction of the statute and that of the Oregon courts that it will never be appropriate for a person who is mandated to file a return to place zeros in any of the spaces requiring information. With these possibilities I must conclude that the writ of mandate proceedings as I have construed the statute is not an appropriate proceeding in which to seek to control the contents of the return which is filed. If the proceeding is to be so used, a more specific showing and more specific findings by the court as a predicate to issuance of the writ than were made in this case will be required. Furthermore, the writ itself will have to be more explicit than it was in this case. A court issuing a writ of mandate will obviously not be in a position to question a return which contains zeros in any of the spaces calling for income information unless the court has determined as a predicate to issuance of the writ at least a minimum figure that should be entered in those spaces. If that determina-

tion has been made, it would necessarily follow that the court would not only have to reject a return containing zeros, but would have to reject a return containing any figures that do not correspond to the determination which formed the predicate for issuance of the writ. If the court is to control the content of the return in this manner through the mandamus procedure, then before it can properly impose the extreme sanction of imprisonment for failing to obey the writ, the court issuing the writ must make specific findings as to the minimum figures which will be required to meet the demands of the writ and the writ itself should direct that at least those minimum figures be entered in certain spaces. In short, if the court issuing the writ is not going to allow the respondent to determine what figures should be entered in the spaces on the tax return, then the court should mandate the minimum figures which it will accept as constituting compliance with the writ.

For these reasons I do not find the federal case law cited by the tax commission involving criminal prosecutions for willful failure to file returns to be apposite. In those cases part of the prosecution's burden of proof is that the defendant had taxable income in an amount sufficient to require the filing of a return. This is a different burden than my construction of the mandamus statute requires as a condition to obtain a writ of mandate. In the writ of mandate context I find the reasoning of the 9th Circuit Court of Appeals in the *Long* case (*United States v. Long,* 618 F.2d 74 (1980)) to be more persuasive than that of the Courts in other circuits which differ with *Long* (cf. *United States v. Moore,* supra).

For the reasons stated in this opinion I find and conclude that the application does not show the petitioner to be unlawfully imprisoned or restrained in light of the established facts that he failed to file a return containing the required verification or certification. His failure to file a return with a proper verification or certification constituted a refusal and failure to obey the

writ of mandate without just excuse and justified his imprisonment pursuant to I.C. 7–314 until the writ is obeyed. For these reasons, I have determined that the application for a Writ of Habeas Corpus should be denied and the Writ should not issue.

DATED This 22d day of September, 1983.

J. Ray Durtschi
/s/ J. Ray Durtschi, District Judge