Don Allen **PIPPIN**, James Allen Adams, John Dick Barnes, Merrell Coffman, John S. Whitney, Donald R. Carpenter, Robert Davidson, Floyd Ray Adams, Dorothy Davis, Larry Joe Lambeth, Jimmie L. Mitchell, Betty Tracy, and Elmer Frye, Plaintiffs-Respondents,

v.

**CITY OF SPRINGFIELD**, Missouri, a Municipal Corporation, Don Busch and Robert Cumley, Defendants-Appellants.

No. 11159.

Missouri Court of Appeals, Southern District, Division Four.

March 26, 1980.

Gregory K. Johnson, Bert V. Twibell, Springfield, for plaintiffs-respondents.

Howard C. Wright, Jr., Lyndel H. Porterfield, Springfield, for defendants-appellants.

Before MAUS, P. J., and GREENE and PREWITT, JJ.

PREWITT, Judge.

Defendants appeal from a judgment construing two ordinances enacted by the Springfield City Council. Both ordinances changed vacation leave for certain city employees. Plaintiffs are employees of the City. The first eight plaintiffs are members of the Springfield Police Officers Association and the remaining five are members of the Professional Administrative and Technical Association. Plaintiffs purport to bring this action individually and as representatives of the association of which they are members. Defendant Don Busch is the city manager of Springfield and defendant Robert Cumley its director of personnel. Defendants will often be referred to here as "the City".

Prior to the enactment of these ordinances, those employed by the City less than 10 years received a maximum of 2 weeks per year vacation leave; from 10 years to 20 years, 3 weeks; and over 20

years, 4 weeks. After 6 months of employment this leave may be taken as accumulated and before the anniversary date of employment if there are no scheduling problems. After discussions with representatives of City employee associations, representatives of the City of Springfield agreed to ask the council to grant employees with 8 years of continuous service 3 weeks of vacation leave and with 18 or more years, 4 weeks. One year later employees with 16 years of continuous service were to have 4 weeks vacation. In order to accomplish this understanding these ordinances were enacted. The parts here pertinent of Bill No. 77307 are:

"*Section 1*—That Chapter 2, Article III, Division 1 of the Springfield City Code, Section 2–26 through Section 2–29 known as the Merit System Rules and Regulations is hereby amended by repealing provisions contained in Rule 21, Leaves of Absence, Section 21.1(a) and Section 21.1(a)(1) pertaining to vacation leave, and enacting new Sections 21.1(a) and 21.1(a)(1) in lieu thereof, which Sections shall read as follows:

'21.1 *Vacation Leave*

(a) Every officer and employee in the City service holding a permanent status position and having occupied such position for a period of six (6) consecutive calendar months shall be allowed annual vacation leave with pay as hereinafter set forth in this article:

'(1) Vacation leave shall be granted on the basis of the number of regularly scheduled hours in the standard work or duty week to which the employee is assigned at the time of his vacation. Employees with less than eight (8) years of continuous service with the City shall be allowed vacation leave at the rate of two times the number of hours in their standard work or duty week. Notwithstanding provisions of this Rule to the contrary, an employee with less than six (6) months of continuous service as a City employee shall not be entitled to any accumulated vacation until the employee has been with the City for six (6) continuous months.

Employees with eight (8) but less than eighteen (18) years of continuous service shall be allowed vacation leave at the rate of three times the number of hours in their standard work or duty week. Employees with eighteen (18) or more years of continuous service shall be allowed annual vacation leave at the rate of four (4) times the number of hours in their standard work or duty week. Employees shall accumulate vacation time for each week of employment at a rate of 1/52 times the number of vacation days per year to which the employee is entitled.'

*Section 2*—From and after the effective date of this ordinance, employees shall accumulate vacation time in accordance with the provisions set forth herein, provided vacation time which was accumulated on the City records prior to the effective date of this ordinance in accordance with prior practices and customs of recording vacation time shall not be invalidated by provisions set forth herein. This ordinance shall be in full force and effect from and after passage and shall apply to the pay period beginning with July 3, 1977."

Council Bill No. 77–306 states in part:

"*Section 1*—That Chapter 2, Article III, Division 1 of the Springfield City Code, Section 2–26 through Section 2–29 known as the Merit System Rules and Regulations is hereby amended by repealing provisions contained in Rule 21, Leaves of Absence, Section 21.1(a) and Section 21.1(a)(1) pertaining to vacation leave, and enacting new Sections 21.1(a) and 21.1(a)(1) in lieu thereof, which Sections shall read as follows:

'21.1 *Vacation Leave*

(a) Every officer and employee in the City service holding a permanent status position and having occupied such position for a period of six (6) consecutive calendar months shall be allowed annual vacation leave with pay as hereinafter set forth in this article:

'(1) Vacation leave shall be granted on the basis of the number of regularly

scheduled hours in the standard work or duty week to which the employee is assigned at the time of his vacation. Employees with less than eight (8) years of continuous service with the City shall be allowed vacation leave at the rate of two times the number of hours in their standard work or duty week. Notwithstanding provisions of this Rule to the contrary, an employee with less than six (6) months of continuous service as a City employee shall not be entitled to any accumulated vacation until the employee has been with the City for six (6) continuous months. Employees with eight (8) but less than sixteen (16) years of continuous service shall be allowed vacation leave at the rate of three times the number of hours in their standard work or duty week. Employees with sixteen (16) or more years of continuous service shall be allowed annual vacation leave at the rate of four (4) times the number of hours in their standard work or duty week. Employees shall accumulate vacation time for each week of employment at a rate of ½₂ times the number of vacation days per year to which the employee is entitled.'

*Section 2*—This ordinance shall be in full force and effect from and after July 1, 1978."

Plaintiffs contend that after 77–307 was enacted any employee who had or thereafter acquired 8 years of continuous service, received 3 weeks of vacation leave and an employee who had or thereafter acquired 18 years of continuous service, received 4 weeks of vacation leave. Under 77–306, plaintiffs claim that any employee who on or after July 1, 1978 had 16 years of continuous service should receive 4 weeks of vacation leave. Those who would receive an additional week of vacation leave under the plaintiffs' interpretation are persons who have or will within a year of its effective date, complete their 8th, 9th, 18th or 19th year of service under Council Bill 77–307, or their 16th or 17th year of service under Bill 77–306. The City contends that on the effective date of these ordinances, the em-

ployees did not receive any more vacation leave than they had previous but only start accruing this leave at the higher rate. This is to be accumulated in accordance with the last sentence of Section 1 of each ordinance. Under the City's interpretation an employee who has completed 8, 9, 18, or 19 years of service on the effective date of 77–307 or 16 or 17 years under 77–306 would not be entitled to an additional week of vacation leave until the ordinance had been effective for 1 year. If such an employee's anniversary date occurred less than a year after the ordinance was in effect, the City contends that on his anniversary. date, he would be entitled to take as vacation leave such proportionate part of the extra week as had accrued since the ordinance's enactment, and not a full extra week.

The trial court entered a decree construing the ordinances as urged by the plaintiffs. The City contends that this ruling was erroneous because the trial court's interpretation would result in employees receiving extra compensation after service has been rendered, in violation of Article III, Section 39(3) of the 1945 Missouri Constitution; that the meaning of the ordinances was clear and the court should not have considered prior discussions and practices; that the court's judgment was inconsistent with its finding that the City's "accumulation theory" does not apply; and that the court erred in finding that plaintiffs were directly affected by Council Bill No. 77–306 because none of the plaintiffs had been employed by the City from 16 to 18 years.

 We consider first the City's contention that the trial court's interpretation of these ordinances is a violation of Article III, Section 39(3) of the present Missouri Constitution. It states:

"*Section 39. Limitations on power of general assembly.* The general assembly shall not have power:

\* \* \* \* \* \*

(3) To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a pub-

lic officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part;"

This section applies to municipalities. *Kizior v. City of St. Joseph*, 329 S.W.2d 605, 609 (Mo.1959). Vacation time is compensation. *Bruce v. City of St. Louis*, 217 S.W.2d 744, 748 (Mo.App.1949). In support of its argument the City cites *Police Retirement System v. Kansas City*, 529 S.W.2d 388 (Mo. 1975) and *Kizior v. City of St. Joseph*, supra. *Police Retirement System* held that it was unconstitutional to add cost of living adjustments to pensions of policemen who had retired prior to the effective date of the statute providing for the adjustments. There "no additional services" were to be received from the policemen. Here continued employment, however short, is a prerequisite to receiving the vacation leave. In *Kizior* additional sums were to be paid to a garbage contractor although a contract for a lesser amount was still in effect. The only consideration for the new agreement was "to continue to collect and dispose of garbage in accordance with the contract . . . ." This was held to be improper as a grant of extra compensation after the contract had been entered into. The contractor was already obligated to continue for the lessor sum. Here there is no legal obligation on the part of the employees to continue their employment with the City.

In *State ex rel. Ross v. General American Life Ins. Co.*, 336 Mo. 829, 85 S.W.2d 68 (1935), the court considered a provision of the then Missouri Constitution which provided in part that no law may be passed "retrospective in its operation, or which imposes on the people of any . . . municipal subdivision . . . a new liability, in respect to transactions or considerations already past." The court there said that a statute is not retroactive "because a part of the requisites for its action is drawn from a time antecedent to its passing." Id. 85 S.W.2d at 74. Also see 82 C.J.S. Statutes § 412, p. 980.

Other jurisdictions have held that additional compensation for present service may be based on the length of service prior to the act granting the additional compensation. *City of San Antonio v. Baird*, 209 S.W.2d 224 (Tex.Civ.App.1948) involved an act increasing wages for police and firemen ten dollars per month for each five years of service. The City of San Antonio contended that this must be service after the effective date of the act. A Texas constitutional provision, almost identical to the one under consideration here, provided that no municipal authority could grant "any extra compensation, . . . after service has been rendered, . . . ." The court held that this provision was not violated and that it was proper to consider the length of service rendered before the effective date of the act. In *Hill v. City of Billings*, 134 Mont. 282, 328 P.2d 1112 (1958), the court considered whether an act providing for an increase in salary of policemen for each year of prior service only applied to service rendered after its enactment. The court there held that prior service could be considered and that the legislature may "use antecedent facts as the measuring device in fixing salaries to be paid after the enactment of the statute." Id. 328 P.2d at 1115.

We think these ordinances should be viewed in accordance with their overall effect in providing these benefits generally to employees and not by considering hypothetical situations or isolated incidents which might entitle an employee to a week of additional vacation leave for little additional service. The changes contemplated by the ordinances were agreed to by representatives of the City and employee groups, and the additional vacation time goes to all who qualify, not to a select few. We think that ruling the ordinances invalid because some may receive a week of vacation leave immediately is too narrow a view and that we should treat the ordinances as they apply to the employees as a whole. While eligibility to receive an extra week of vacation requires a certain length of prior service, it is not "extra compensation . . . after service has been rendered". To receive this benefit the employment must continue. Employees who have previously terminated will not receive this additional vacation

leave. The reasons for providing additional vacation leave may be to encourage employees to continue to work for the City and to give additional compensation to these experienced employees. It is an "extra" for continuing to work for the City but is not an extra after the service has been rendered. To receive this benefit there must be present service together with the required length of prior service. We hold that the ordinances as interpreted by the trial court do not violate Article III, Section 39(3) of the 1945 Missouri Constitution.

We next consider the contention of the City that the court erred in considering matters outside the ordinances because the ordinances are "clear on their faces". This point is premised on the contention that the ordinances unquestionably state the City's interpretation and that the court need only examine them to make that determination. We do not agree that their meaning is that certain. Were it not for the last sentence in Section 1 of both ordinances, those sections would appear to be contrary to the City's interpretation. That sentence provides that employees "shall accumulate vacation time for each week of employment at a rate of ½₂ times the number of vacation days per year to which the employee is entitled." The trial court was entitled to consider the circumstances surrounding the enactment of the ordinances in determining if this sentence controls or modifies the language above it. The trial court found that this sentence is to be used to determine how much vacation leave an employee still has after having taken some vacation leave and that at "termination of employment, the amount of vacation accrued would be relevant."

■ Where a statute is ambiguous, it is proper to consider its history, the surrounding circumstances, and the ends to be accomplished by it. *State ex rel. Zoological Park Subdistrict of the City and County of St. Louis v. Jordan*, 521 S.W.2d 369, 372 (Mo.1975). A well established rule of statutory construction is that a statute must be construed in the light of what it seeks to remedy and in light of the conditions at the time of its enactment. *State v. Wright*, 515 S.W.2d 421, 427 (Mo. banc 1974). In discussions between the City and the employee groups, the "accrual" or "accumulation" theory was never considered. It appeared to be the understanding of all parties then that persons with the prescribed years would receive an extra week of vacation immediately upon the enactment of the ordinances. The ordinances were enacted as a result of these negotiations. We think the trial court properly considered the circumstances leading to their enactment in construing them and that his construction was correct. That construction gave meaning and purpose to all parts of the ordinances. We believe they were interpreted as a person would ordinarily read and construe them.

■ The City also contends that the trial judge erred in stating in the judgment that employees had "accumulated" specific amounts of vacation because that ruling is inconsistent with the court's finding that the City's "accumulation theory" does not apply and that in setting forth the amount of vacation leave the employees were entitled to, the court did not consider that some vacation leave may have already been taken.

We do not agree with the City's view of the trial court's decree in either of these respects. The decree used "accumulated" in referring to the amount of vacation time that the various categories of employees should receive. Use of this word did not make the decree inconsistent with the court's findings. The court's ruling was clear. Whether the employees receive or "accumulate" vacation leave, if they have served the required years, they get the extra week immediately.

We also do not interpret the court's decree as holding that employees would be entitled to their full amount of vacation leave even if they had already taken a part of it. If an employee has taken a part of his vacation leave, there is nothing in the court's decree indicating that it should not be deducted from his total. This was not disputed by plaintiffs at the trial court or

here. The decree recited the trial court's construction of the disputed parts of the ordinances. It did not provide for their application except in the disputed areas. The trial court was not as the city contends, "in effect, wiping out all prior records of vacation for these employees . . . ." This was not an issue before the court and we do not believe that the court granted vacation leave to the employees irrespective of that taken.

■ The City also contends that the Court erred in finding that plaintiffs were "directly affected" by Council Bill 77–306 because no plaintiff had been employed by the City from 16 to 18 years, and thus plaintiffs cannot represent this "class" of employees. Previous to the trial, at defendant's request, the court sought clarification as to what employees plaintiffs intended to represent. Plaintiffs stated they were purporting to represent the members of the Springfield Police Officers Association and the members of the Professional Administrative and Technical Association. They did not attempt to be representative of all of the class of employees affected. The case was tried as if plaintiffs could represent employees who had been employed 16 to 18 years. Plaintiffs and the City both introduced, without objection, evidence concerning the manner in which 16 to 18 year employees should receive extra vacation.

A determination as to vacation leave for 8, 9, 18 or 19 year employees under 77–307 would be on the same basis as a determination for 16 or 17 year employees under 77–306. The court found that plaintiffs fairly and adequately protected the interests of the association and its members. That is the only requirement of Rule 52.10, V.A.M.R. *Owens v. Savage*, 518 S.W.2d 192, 198 (Mo.App.1974). The interests were very similar and plaintiffs appear to have well represented those employees. To represent them they were not required to be "directly affected" themselves. No reason exists for us to determine if the court was correct in finding that plaintiffs were directly affected. It was not a necessary determination and if error, would not affect

the merits of this action. "No appellate court shall reverse any judgment, unless it finds that error was committed by the trial court against the appellant, materially affecting the merits of the action." Rule 84.13(b), V.A.M.R.

We believe that the trial court correctly construed the ordinances and that they do not violate Article III, Section 39(3) of the Missouri Constitution.

Respondents' motion to dismiss the appeal is overruled.

The judgment is affirmed.

All concur.