

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JESSICA A. GOODMAN,<br>SALINE COUNTY ASSESSOR, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD86126 |
| | ) | |
| SALINE COUNTY COMMISSION,<br>KILE GUTHREY, JR., PRESIDING<br>COMMISSIONER, STEPHANIE<br>GOODEN, NORTHERN<br>COMMISSIONER, CHARLES<br>MONTE FENNER, SOUTHERN<br>COMMISSIONER, and CINDI<br>SIMS, SALINE COUNTY<br>COLLECTOR, | ) | Filed:  March 18, 2025 |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Saline County
The Honorable Kelly Ann Rose, Judge**

**Before Division One:  Alok Ahuja, P.J., and
Cynthia L. Martin and Thomas N. Chapman, JJ.**

This case involves two disputes between the Assessor of Saline County, on the one hand, and the Saline County Commission and County Collector, on the other:  (1) a dispute over the percentage of property taxes which the County is required to deposit into an assessment fund to finance the operations of the Assessor's office; and (2) a dispute concerning the legality of certain

compensation the Assessor intended to pay to members of her staff. The circuit court dismissed the Assessor's petition, which sought declaratory and injunctive relief. The Assessor appeals. This Court initially transferred the Assessor's appeal to the Missouri Supreme Court, based on our conclusion that the Assessor had raised a challenge to the constitutional validity of § 48.020.1.[1] After finding that the Assessor had not properly raised any constitutional claim in the circuit court, the Missouri Supreme Court retransferred the appeal to this Court. We now affirm the circuit court's judgment in part, and reverse in part.[2]

**Factual Background**

On October 25, 2022, Jessica Goodman, in her capacity as the elected Saline County Assessor, filed a petition in the Circuit Court of Saline County against the Saline County Commission; the three County Commissioners at that time (Kile Guthrey, Jr., Charles Monte Fenner, and Stephanie Gooden); and Cindi Sims, the Saline County Collector. Since the filing of the Assessor's petition, Becky Plattner has been elected as a County Commissioner in place of Kile Guthrey, Jr., and has been substituted for him as a defendant. We refer to the County Commission and the Commissioners collectively as "the Commission," and refer to all defendants collectively as "the County."

In Count I, the Assessor's petition alleged that on June 10, 2022, she closed her office for a day because the year's tax valuations had been completed. The petition alleged that, "[a]s a benefit to [*sic*] the work done by her employees, and

---

[1]    Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2024 Cumulative Supplement.

[2]    We borrow substantially from our initial opinion in this appeal without further attribution.

an agreement duly reached between each employee and the Assessor, the Assessor declared the day off would be compensated." The petition alleged, however, that the Commission had refused to authorize payment of compensation to the Assessor's employees for June 10. The petition contended that the Commission had acted in excess of its authority in denying this compensation, and in derogation of the Assessor's authority to determine how the funds appropriated for her office are allocated. (Count I also included an additional dispute about employee pay increases that the parties agree is now moot).

In Count II, the Assessor's petition alleged that Saline County is a fourth-class county with an obligation under § 137.720 to deposit one percent of all *ad valorem* property tax collections into the County's assessment fund. Despite that mandatory obligation, the petition alleged that the County has only deposited one-half of one percent of property tax collections into the assessment fund, thereby significantly underfunding the Assessor's operations.

Count III contended, in the alternative, that the court should declare that Saline County is properly classified as a third-class county. The Assessor alleged that, as a fourth-class county, Saline County was "operat[ing] under the laws of this state applying to [counties of] the second classification." § 48.020.1. The petition listed the certified total assessed valuation of Saline County property for 2016 through 2022. The Assessor alleged that, for more than five years, the total assessed valuation of property in the County had fallen below the monetary threshold required for it to qualify as a second-class county. The petition alleged that, "[a]s Saline County has had five (5) consecutive years of assessed valuation

3

placing it as a third class county, Section 48.030 mandates Saline County be classified as a county of the third class beginning with the 2021 fiscal year or after the general election."

In Count IV, the Assessor requested a temporary restraining order against the Collector, requiring her to deposit one percent of the County's property tax collections into the assessment fund. Count V prayed for an award of attorney's fees against the Commission. To justify a fee award, the Assessor contended that the Commission had failed to comply with its ministerial duties to pay Assessor's Office employees as the Assessor directed, and to deposit required funds in the assessment fund. The petition alleged the Commission's actions were "arbitrary, capricious, or in bad faith," and "were consciously designed to hamstring the [Assessor] . . . as retribution for the [Assessor] speaking out against" the Commission.

The Commission moved to dismiss the Assessor's petition. The motion argued that the Commission and its members were not proper parties-defendant with respect to Counts II and IV (concerning the amount of the County's required deposits into the assessment fund). The motion also argued that the extra vacation day authorized by the Assessor was an unlawful bonus payment to Assessor's Office employees for work previously performed.

In response to the Assessor's claim that Saline County had been reclassified as a third-class county under § 48.030, the Commission argued that the County was exempted from this reclassification process by statute. The Commission noted that, under § 48.020.1, fourth-class counties are defined as follows:

> Classification 4. All counties which have attained the second classification prior to August 13, 1988, and which would otherwise

4

return to the third classification after August 13, 1988, because of changes in assessed valuation shall remain a county in the second classification and shall operate under the laws of this state applying to the second classification.

The Commission argued that "RSMo § 48.020(1) is explicit in that changes in assessed valuation are immaterial to a change in classification for Fourth Class counties, particularly for those counties which would return to the third classification as the Assessor is seeking."

The Collector filed a separate motion to dismiss, which similarly argued that Saline County was not subject to reclassification pursuant to § 48.030, based on the definition of fourth-class counties in § 48.020.1. Although the Collector's motion itself argued that Saline County falls within the definition of Classification 4 in § 48.020.1, and was therefore exempt from reclassification under § 48.030, the motion also contended that the petition should be dismissed because "[t]he Assessor has not submitted any allegations regarding Saline County's classification on or about August 13, 1988, a necessary element to making any determination under" § 48.020.1.

In her opposition to the motions to dismiss, the Assessor argued, among other things, that it would be unconstitutional for § 48.020.1 to exempt fourth-class counties from the assessed-valuation-based reclassification process applicable to all other counties.

On March 8, 2023, the circuit court issued its judgment dismissing all claims in the Assessor's petition for failure to state a claim upon which relief can be granted. As to Count I, the court found that the allegations of the Assessor's petition established that she was proposing to give her employees a bonus for work previously performed, in violation of Article III, § 39 of the Missouri

5

Constitution.  The court also concluded that the Commission's authority to determine the Assessor's budget authorized it to deny workers additional compensation even if that compensation were otherwise lawful.  With respect to Counts II-IV, the court found that the Assessor's petition was defective because it "fails to list the assessed valuation of Saline County on August 13, 1988, or any other statutory requirements which would necessitate" a one percent allocation of property taxes to the Assessor's Office.  The court also concluded that reclassification of Saline County "is beyond the jurisdiction of this Court."

The Assessor appealed to this Court.  We initially held that the appeal fell within the exclusive appellate jurisdiction of the Missouri Supreme Court under Article V, § 3 of the Missouri Constitution, because of the Assessor's argument that § 48.020.1 was unconstitutional if interpreted as the County advocated. *Goodman v. Saline County Comm'n*, No. WD86126, 2024 WL 1392392 (Mo. App. W.D. April 2, 2024).  Without addressing the merits of any of the Assessor's claims, we ordered that the appeal be transferred to the Missouri Supreme Court pursuant to § 477.080 and Article V, § 11 of the Missouri Constitution.  The Supreme Court, however, concluded that the Assessor "never properly raised a claim that section 48.020.1 is invalid under the Missouri Constitution," because she had not alleged that the statute was unconstitutional in her pleadings. *Goodman v. Saline County Comm'n*, No. SC100554, 699 S.W.3d 437, 440 (Mo. Nov. 5, 2024).  The Supreme Court retransferred the case to this Court for a decision on the merits. *Id*. at 442.

6

## Discussion

## I.

"Before reaching the merits of a case on appeal, an appellate court must first determine its jurisdiction to do so." *Smith v. Smith*, 682 S.W.3d 126, 133 (Mo. App. W.D. 2024) (citing *Johnson v. Johnson*, 668 S.W.3d 316, 322 (Mo. App. W.D. 2023)).

Under Rule 67.03, "[a]ny involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." In this case, the circuit court's judgment does not specify that its dismissal would be with prejudice; its dismissal of the petition was accordingly without prejudice.

The fact that the circuit court dismissed the Assessor's petition without prejudice "raises a question of whether the judgment is final and appealable," because the Missouri Supreme Court "occasionally has referred to a 'general rule that a dismissal without prejudice is not a final judgment and, therefore, is not appealable.'" *Naylor Sr. Citizens Hous., LP v. Side Constr. Co.*, 423 S.W.3d 238, 242 (Mo. 2014) (citation omitted). *Naylor* noted, however, that "[i]t is unclear to what extent, if any, this 'general rule' ever was followed"; it observed that "[o]ver time, . . . exceptions seemed to have swallowed all or nearly all of whatever rule once might have existed." *Id.* at 243; *see also State ex rel. Henderson v. Asel*, 566 S.W.3d 596, 599 n.6 (Mo. 2019) (quoting *Naylor*). In particular, as the Supreme Court noted in its opinion in this case, "[w]hen a party elects to stand on the original pleadings, a dismissal without prejudice is considered a final judgment for purposes of appeal." *Goodman*, 699 S.W.3d at 439 n.4 (citing *Mayes v. St. Luke's Hosp.*, 430 S.W.3d 260, 265 (Mo. 2014) (in turn citing *Mahoney v.*

*Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. 1991))); *see also, e.g.*, *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 67 n.2 (Mo. 2018).

Because the Assessor has chosen to stand on her petition and appeal the circuit court's dismissal, the judgment is final and appealable even though the circuit court dismissed the Assessor's petition without prejudice.

## II.

We begin by addressing the circuit court's dismissal of the Assessor's claims concerning the level of Saline County's required contributions to the County's assessment fund.

> This Court reviews de novo a circuit court's decision to sustain a motion to dismiss for failure to state a claim. A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. This Court reviews the petition in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause of action that might be adopted in that case.

*Bell v. Shelter Gen. Ins. Co.*, 701 S.W.3d 614, 618 (Mo. 2024) (cleaned up).

## A.

The Assessor's arguments concerning the assessment fund involve the interplay of three statutes: §§ 48.020, 48.030, and 137.720.

Section 48.020 establishes a classification system for Missouri counties. Classifications 1, 2 and 3 are defined based on the aggregate assessed valuation of the real and personal property in the county. The assessed valuations have been annually adjusted since 2010 based on changes in the Consumer Price Index for All Urban Consumers (the "CPI-U"). § 48.020.2. Based on the 2010 dollar figures appearing in the statute, Classifications 1, 2 and 3 are defined as follows. First-class counties are those which have maintained an assessed valuation of

8

$900 million or more for five years, as well as those counties with an assessed valuation over $600 million for five years, whose governing bodies elect first-class treatment. § 48.020.1. Second-class counties are those counties which have maintained an assessed valuation between $600 and $900 million for five years. *Id.* Classification 3 includes "[a]ll counties having an assessed valuation of less than the assessed valuation necessary for that county to be in the second classification." *Id.* Finally, § 48.020.1 defines fourth-class counties as follows:

> Classification 4. All counties which have attained the second classification prior to August 13, 1988, and which would otherwise return to the third classification after August 13, 1988, because of changes in assessed valuation shall remain a county in the second classification and shall operate under the laws of this state applying to the second classification.

> Section 48.030.1 provides that a county's classification may change if "the assessed valuation of the county is such as to place it in . . . [an]other class for five successive years." With an exception not relevant here,

> the change from one classification to another shall become effective at the beginning of the county fiscal year following the next general election after the certification by the state equalizing agency for the required number of successive years that the county possesses an assessed valuation placing it in another class.

§ 48.030.5.

In Count III of her petition, the Assessor contended that Saline County had been reclassified as a third-class county by operation of § 48.030, because the total assessed valuation of property in the County had fallen below the threshold for second-class counties for more than five consecutive years. In their motions to dismiss, the Commission and the Collector argued that, based on the definition of fourth-class counties in § 48.020.1, those counties are exempt from the

9

assessed-valuation-based reclassification process specified in § 48.030.  In essence, the County contended that counties in Classification 4 remain second-class counties *in perpetuity*, without regard to the assessed valuation of the property in those counties.

The final statute relevant to the Assessor's assessment-fund claims is § 137.720.  Although § 48.020.1 provides that each fourth-class county "shall remain a county in the second classification and shall operate under the laws of this state applying to the second classification," § 137.720.1 purports to require fourth-class counties to deposit a higher percentage of property taxes into their assessment funds than is required of second-class counties.  Section 137.720.1 provides in relevant part:

> A percentage of all ad valorem property tax collections allocable to each taxing authority within the county and the county shall be deducted from the collections of taxes each year and shall be deposited into the assessment fund of the county as required pursuant to section 137.750.  The percentage shall be one-half of one percent for all counties of the first and second classification . . . and one percent for counties of the third and fourth classification.

Separate from her argument that Saline County has been reclassified as a third-class county by operation of § 48.030, the Assessor also argues that the County is required to deposit one percent of property taxes into its assessment fund by operation of § 137.720.1, even if the County remains in Classification 4.

As will become evident in the discussion which follows, the relationship among §§ 48.020, 48.030, and 137.720 is not obvious or clear.  In order to interpret the statutes in a principled and coherent fashion, we restate some of Missouri's fundamental rules of statutory interpretation.  We begin at the beginning:  "'The primary rule of statutory construction is to ascertain the intent

10

of the legislature from the language used and to give effect to that intent if possible.'" *City of Harrisonville v. Mo. Dep't of Nat. Res.*, 681 S.W.3d 177, 186 (Mo. 2023) (quoting *State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 6 (Mo. 2023)).

> [In interpreting a statute,] this Court seeks to identify the intent of the legislature by considering the plain meaning of the statutory text. In determining the meaning of words in a statute, the words should not be read in isolation but rather must be considered in context and sections of the statutes in *pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words. Additionally, statutes are interpreted to avoid unreasonable or absurd results.

*Fox v. State*, 640 S.W.3d 744, 757 (Mo. 2022) (cleaned up).

"The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and to give meaning to the statutes." *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 251 (Mo. 2003) (citation omitted). "Statutes must be given a 'common sense and practical interpretation.'" *Concord Publ'g. House, Inc., v. Dir. of Revenue*, 916 S.W.2d 186, 194 (Mo. 1996) (citation omitted). "Only when the language is ambiguous or if its plain meaning would lead to an illogical result will the court look past the plain and ordinary meaning of a statute." *Andresen v. Bd. of Regents of Mo. W. State Coll.*, 58 S.W.3d 581, 587 (Mo. App. W.D. 2001).

"'Where two statutory provisions covering the same subject matter are unambiguous standing separately but are in conflict when examined together, a reviewing court must attempt to harmonize them and give them both effect.'" *Cosby v. Treasurer of State*, 579 S.W.3d 202, 212 (Mo. 2019) (quoting *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. 2009)).

**B.**

We first address the Assessor's reliance on § 137.720.1, which provides that "[t]he percentage [of property taxes deposited in the assessment fund] shall be one-half of one percent for all counties of the first and second classification . . . and one percent for counties of the third and fourth classification." Section 137.720.1 purports to state a contribution percentage for fourth-class counties which is higher than the percentage required for second-class counties. This differential treatment runs headlong into § 48.020.1, which provides that every fourth-class county "shall remain a county in the second classification and shall operate under the laws of this state applying to the second classification."

While we are instructed to harmonize statutes whenever possible, the provisions of § 137.720.1 which set different contribution levels for second- and fourth-class counties cannot be reconciled with § 48.020.1. Canons of statutory construction provide that, where two statutory provisions cannot be reconciled, we should give precedence to the more specific of the two provisions, and/or to the later-enacted statute. *See*, *e.g.*, *City of Aurora v. Spectra Commc'n Grp., LLC*, 592 S.W.3d 764, 788 (Mo. 2019); *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 606 (Mo. 2019); *S. Metro. Fire Prot. Dist.*, 278 S.W.3d at 666.

The problem in this case is that it is not at all clear which statute – § 48.020.1 or § 137.720.1 – is the more specific. Section 137.720.1 addresses the precise issue in dispute between the Assessor and the County: the percentage of property-tax revenues which taxing authorities within different classes of counties must deposit into their county assessment funds. *See generally State ex rel. Comm'rs of the State Tax Comm'n v. Davis*, 621 S.W.2d 511 (Mo. 1981) (explaining the genesis and operation of § 137.720). Section 48.020.1, on the

other hand, actually *creates* and *defines* fourth-class counties.  It specifically directs – without exception or qualification – that fourth-class counties "shall remain a county in the second classification and shall operate under the laws of this state applying to the second classification."  The chronological relationship between the two statutes is also convoluted, since both statutes have been enacted, and re-enacted, multiple times over the last four decades – retaining all-the-while their inconsistent provisions.

We conclude that, although § 137.720 purports to impose different obligations on second- and fourth-class counties to contribute to their assessment funds, it cannot be read to require fourth-class counties to make larger contributions than second-class counties.  Although § 137.720 mandates the contributions which different classes of counties must make to their assessment funds, the statute has no meaning without reference to § 48.020.1 (the statute specifying which counties fall into the classifications to which § 137.720 refers).  Moreover, § 48.020.1 does not truly *create* a fourth classification of counties:  instead, it states that counties meeting certain criteria "*shall remain a county in the second classification*," subject to "the laws of this state applying to the second classification."  To "remain" means "to stay in the same place or with the same person or group," "to continue unchanged." https://www.merriam-webster.com/dictionary/remain.  Thus, although § 48.020.1 ostensibly defines a "Classification 4," the statute actually describes an additional group of counties which will stay, and continue unchanged, as *members of Classification 2*.  Section 48.020.1 does not create an independent

13

class of fourth-class counties subject to different legal treatment than other second-class counties.

Sections 48.020 and 48.030 should be given precedence in this case, because they actually *create* Missouri's county-classification system. When the General Assembly enacted the predecessors to §§ 48.020 and 48.030 following the adoption of Missouri's 1945 Constitution, it declared in an emergency clause that "the classification provided in this act is the foundation upon which the whole structure of county government and laws relating thereto rests." H.B. 476 § 4, 63rd Gen. Assembly, 1945 MO. LAWS 1801, 1803. This Court has recognized "the pervasive effect of Sections 48.020 and 48.030 on the legislative scheme for county government." *State ex rel. Hall v. Bauman*, 466 S.W.2d 177, 182 n.1 (Mo. App. 1971).

> Relating as it does to the entire subject of county government, it therefore provides a background against which all other statutes relating to county government and the compensation of officers must be read. It is, in effect, the limiting statute upon all other legislative action dealing with county government. . . .
>
> It takes but a casual examination of the statutes relating to county government to realize the importance of Section 48.020 as a generic statute.

*Id.* at 181-82.

For these reasons, § 137.720.1's specification that "[t]he percentage [deposited in the assessment fund] shall be . . . one percent for counties of the . . . fourth classification" did not require that Saline County contribute one percent of property-tax collections to its assessment fund. Instead, as a county falling within Classification 4, Saline County would be subject to the requirement in

14

§ 130.720.1 that "[t]he [allocation] percentage shall be one-half of one percent for all counties of the . . . second classification."

We recognize that our holding denies any operative effect to § 137.720.1's reference to "counties of the . . . fourth classification." This result is contrary to the general principle that, in interpreting statutes, "[e]ach word, clause, sentence, and section of the statute will be given meaning, and this Court will not interpret the statute in a way that renders some phrases mere surplusage." *Farish v. Mo. Dep't of Corr.*, 416 S.W.3d 793, 796 (Mo. 2013) (citation omitted); *see also*, *e.g.*, *State ex rel. Swoboda v. Mo. Comm'n on Hum. Rts.*, 651 S.W.3d 800, 807 (Mo. 2022) (when interpreting statutes, courts apply the "presumption [that] the legislature . . . intend[s] all words used to have meaning, . . . and . . . does not include unnecessary or superfluous language"; citations omitted). Faced with irreconcilable statutory provisions, however, only one can be given effect in a particular situation. Moreover, the reference to "counties of the . . . fourth classification" *had effect* when § 137.720.1 was enacted in 1980, because at that time, fourth-class counties were defined as an independent class based on assessed valuation. *See* § 48.020, RSMo Cum. Supp. 1980. And § 137.720.1's reference to "counties of the . . . fourth classification" may become operative in the future, if the General Assembly alters the definition of fourth-class counties yet again.

The circuit court did not err in dismissing Count II of the Assessor's petition.

15

## C.

While we reject the Assessor's argument based on § 137.720, we conclude that the circuit court erred in dismissing Count III of the Assessor's petition, which argued that Saline County had been reclassified as a third-class county by operation of § 48.030.

As we have explained above, § 48.020.1 provides that fourth-class counties "shall operate under the laws of this state applying to the second classification." One of the laws applicable to second-class counties is § 48.030. It specifies that second-class counties become third-class counties if the total assessed valuation of the county's property falls below the threshold for a second-class county for five successive years. Section 48.030 provides in relevant part:

1. No county shall move from a lower class to a higher class or from a higher class to a lower class until the assessed valuation of the county is such as to place it in the other class for five successive years and until the change has become effective as provided for in this section.

2. No second class county shall become a third class county until the assessed valuation of the county is such as to place it in the third class for at least five successive years.

. . . .

5. . . . [T]he change from one classification to another shall become effective at the beginning of the county fiscal year following the next general election after the certification by the state equalizing agency for the required number of successive years that the county possesses an assessed valuation placing it in another class. If a general election is held between the date of the certification and the end of the current fiscal year, the change of classification shall not become effective until the beginning of the county fiscal year following the next succeeding general election.

(The "certification by the state equalizing agency" referenced in § 48.030.5 is the annual report prepared by the State Tax Commission pursuant to § 138.445. *See* Op. Mo. Att'y Gen. No. 327-72, at 4 (1972).)

The Assessor's petition alleges that the total assessed valuation of Saline County fell below $600 million dollars (in 2010 dollars) for seven continuous years prior to the filing of the Assessor's petition. Indeed, the petition alleges that Saline County's total assessed valuation was no higher than $431 million in any year between 2016 and 2022 – not even close to the $600 million threshold. If those allegations are true, then Saline County would have become a third-class county by operation of § 48.030.

The circuit court dismissed Count III of the Assessor's petition on two grounds: that the petition "fails to list the assessed valuation of Saline County on August 13, 1988"; and that reclassification of Saline County "is beyond the jurisdiction of this Court." Neither rationale justified the dismissal of Count III. While the Assessor's petition did not affirmatively allege Saline County's total assessed property valuation either before or after August 13, 1988, her petition explicitly alleged that Saline County was operating as a fourth-class county. Moreover, in their motions to dismiss, both the Commission and the Collector *affirmatively relied* on Saline County's status as a fourth-class county to argue that the County was exempt from § 48.030's reclassification process. Given that Saline County's status as a fourth-class county was admitted by all parties, the circuit court erred in concluding that the Assessor's petition was fatally defective for failing to explicitly allege the historical facts which originally placed Saline County into that classification.

17

The circuit court also erred in concluding that it lacked jurisdiction to address the Assessor's prayer for a declaration that Saline County had become a third-class county. "Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal. . . .'" *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. 2009) (emphasis added by Supreme Court). "Applying this principle to the present case makes simple the task of determining jurisdiction:  The present case is a civil case. Therefore, the circuit court has subject matter jurisdiction and, thus, has the authority to hear this dispute." *Id.* at 254.

The County did not argue in the circuit court that the court lacked subject-matter jurisdiction to address Count III of the Assessor's petition, and it does not argue a lack of subject-matter jurisdiction on appeal.  The County *does* argue, however, that under § 48.040, "the state auditor is the party that must force the hand of a county operating under an inappropriate classification."  Based on § 48.040, the County contends that the Assessor lacked authority to sue for recognition of Saline County's reclassification, without at least naming the State Auditor as a defendant.

Section 48.040 does not give the State Auditor the authority to classify and reclassify Missouri counties, however; the statute merely requires the State Auditor to notify counties of classification changes.  Section 48.040 provides:

> It shall be the duty of the state auditor, as the supervisor of county audits, to examine annually the assessed valuation figures of the various counties immediately upon the certification of same by the state equalizing agency and to ascertain if any county shall have changed classifications as determined in this chapter.  In case it shall

be found that any county has met the requirements of reclassification as set forth in this chapter, it shall be the duty of the state auditor within thirty days after said certification to notify officially all county elected officers and the county officials charged with the supervision of elections of the change in status of the county.

In Opinion Letter No. 72-54 (Nov. 22, 1954), addressed to Clay County Prosecuting Attorney Stephen R. Pratt, the Missouri Attorney General concluded that a county's reclassification could become effective even if the State Auditor failed to perform its notification function under § 48.040. After quoting §§ 48.030 and 48.040, the Attorney General explained:

> It is apparent from these provisions that the essential matter to be determined in ascertaining whether or not a county has changed from one classification to another is whether or not the state equalizing agency, which is the State Tax Commission, has found that the county has possessed for five successive years an assessed valuation which places it in another class. Insofar as this determination is concerned, the State Auditor performs no duties whatsoever; his only function is a ministerial one; he notifies the county upon examination of the valuation figures certified by the State Tax Commission.

> Under such circumstances we are of the opinion that the mere failure of the State Auditor to comply with the requirements of Section 48.040 and notify the county of its change in classification does not prevent a county which has met with the requirements of Section 48.030 from changing its classification.

Op. Mo. Att'y Gen. 72-54, at 3. The same opinion also declares that "[n]o discretion whatsoever is conferred upon [the State Auditor] regarding the matter" of county reclassification. *Id.*

"'[A]n opinion of the Attorney General is not binding . . . but may be, and often is, persuasive.'" *Nat'l Council for Tchrs. Quality, Inc. v. Curators of Univ. of Mo.*, 446 S.W.3d 723, 728 (Mo. App. W.D. 2014) (quoting *Mesker Bros.,*

*Indus., Inc. v. Leachman*, 529 S.W.2d 153, 158 (Mo. 1975)). We conclude that Opinion 72-54 accurately describes the State Auditor's role in the county-reclassification process as a ministerial one. The Opinion also accurately concludes that a county's reclassification becomes effective when the conditions specified in § 48.030 occur, whether or not the State Auditor has provided the notification required by § 48.040. The circuit court did not lack jurisdiction, or authority, to decide Count III of the Assessor's petition because the State Auditor was not a party to the lawsuit.

The County's primary argument against reclassification is its claim that § 48.020.1 mandates that fourth-class counties be *perpetually* treated as second-class counties, exempt from the assessed-valuation-based reclassification system established in § 48.030. We cannot agree that fourth-class counties are forever exempt from reclassification, however. The definition of Classification 4 in § 48.020.1 provides that fourth-class counties "shall operate under the laws of this state applying to the second classification," without exception. One such "law[ ] . . . applying to the second classification" is § 48.030, which explicitly provides that a second-class county "shall become a third class county" if its assessed valuation would place it in the third class for five successive years.

The County's argument seeks an exemption from § 48.030 which does not exist in the statute. "'Where a statute incorporates no exception, a court should not insert one by judicial legislation.'" *Estes as Next Friend for Doe v. Bd. of Trs. of Mo. Pub. Entity Risk Mgmt. Fund*, 623 S.W.3d 678, 712 (Mo. App. W.D. 2021) (citation omitted); *accord, Branson v. Dir. of Revenue*, 601 S.W.3d 302, 305 (Mo. App. E.D. 2020) ("We cannot add language nor create an exception to the

statutory requirements where none exists." (citations omitted)). "This Court must construe the plain language enacted by the Missouri legislature. In construing a statute, courts cannot add statutory language where it does not exist; rather, courts must interpret the statutory language as written by the legislature." *Li Lin v. Ellis*, 594 S.W.3d 238, 244 (Mo. 2020) (cleaned up). Because the General Assembly did not exclude fourth-class counties from § 48.030, Saline County is subject to reclassification under that statute if its assessed valuation for five consecutive years fell below the threshold for a second-class county.

We recognize that § 48.020.1 specifies that "[a]ll counties which have attained the second classification prior to August 13, 1988, and which would otherwise return to the third classification after August 13, 1988, because of changes in assessed valuation shall remain a county in the second classification." This language is properly understood, however, to exempt second-class counties only from immediate reclassification because of the changes to the assessed-valuation thresholds which became effective on August 13, 1988. Prior to August 1988, the assessed-valuation threshold for second-class counties was $125 million. § 48.020, RSMo 1986. In August 1988, however, that threshold more than doubled, to $300 million. § 48.020, RSMo Supp. 1988. Reading the definition of Classification 4 in § 48.020.1 *in pari materia* with § 48.030, § 48.020.1 only exempted pre-existing second-class counties from reclassification due to the "changes in assessed valuation" effected by the 1988 legislation. Section 48.020.1 does not guarantee that counties which fell within Classification 2 prior to 1988 would *always* maintain that status.

The assessed-valuation threshold for second-class counties has increased twice since 1988: in 2004, the threshold increased by 50% from $300 million to $450 million, *see* § 48.020, RSMo Cum. Supp. 2004; and in 2010, the threshold increased by 33% from $450 million to $600 million, where it now stands. *See* § 48.020.1. Further, in 2010, the legislature added the escalator clause found in § 48.020.2, which provides for annual cost-of-living increases (but not decreases) to the assessed-valuation thresholds in § 48.020.1.

The County's argument would largely defeat the effect of the changes to the definition of Classification 2 which the General Assembly has made over the last four decades. According to the County's argument, the legislature's significant increases to the monetary threshold for membership in Classification 2 would apply only to *new entrants* to that category; no county which was in Classification 2 prior to August 13, 1988, could ever leave that classification, no matter how much the assessed-valuation threshold changed over time. If not an absurd outcome, that is surely an *unreasonable* one, which we hesitate to endorse without clear statutory language requiring that result.

The County also argues that we should adopt its interpretation of § 48.020.1, because that interpretation avoids disrupting the operations of counties which had qualified as second-class counties prior to August 13, 1988, and which had structured their county governance in reliance on their second-class status. But by enacting § 48.030, and by periodically changing the monetary thresholds defining particular classifications, the General Assembly plainly recognized that the classification of particular counties could change over time. Section 48.030 avoids abrupt changes to a county's classification and

22

governmental structure, by requiring that the county fall below the relevant assessed-valuation threshold for *five years* before a change in classification becomes effective. As we have previously recognized, "[t]he obvious intent of Section 48.030 is to provide stability and to delay a change of class of a county until the valuation [change] has continued long enough to show the [change] . . . was permanent"; the statute "provide[s] for orderly change in classification of counties." *State ex rel. Hall v. Bauman*, 466 S.W.2d 177, 182 (Mo. App. 1971). The General Assembly has addressed the potential disruptiveness of county reclassification in the manner it deemed appropriate; Saline County is not entitled to an additional, extra-statutory exemption from the reclassification process.

It is also significant that adoption of the County's argument would raise constitutional concerns. The Missouri Supreme Court has stated that courts should "avoid[ ] interpreting a statute in a way 'that would call into question its constitutional validity.'" *State ex rel. Parson v. Walker*, 690 S.W.3d 477, 485 (Mo. 2024) (quoting *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 187 (Mo. 2011)).

The County's argument would establish two different criteria for classifying Missouri counties: (1) an assessed-valuation-based standard for first-, second- and third-class counties; and (2) a separate standard for fourth-class counties, based on their classification as second-class counties prior to August 13, 1988. The application of disparate criteria to classify counties would potentially create a constitutional infirmity under Article VI, § 8 of the Missouri Constitution, which provides in relevant part:

23

Provision shall be made by general laws for the organization and classification of counties except as provided in section 18(a) or section 18(m) of this article or otherwise in this constitution. The number of classes shall not exceed four, and the organization and powers of each class shall be defined by general laws so that all counties within the same class shall possess the same powers and be subject to the same restrictions.

The Missouri Supreme Court has held in two cases that, under Article VI, § 8, all Missouri counties must be classified using a single, uniform set of standards. In *Chaffin v. Christian County*, 359 S.W.2d 730 (Mo. 1962), the Court held that an earlier version of § 48.030 was unconstitutional because it provided that, even if a fourth-class county satisfied the assessed-valuation threshold to become a third-class county, the fourth-class county would only be reclassified if the county's voters approved the change. *Id.* at 731. The Supreme Court emphasized that the voter-approval requirement departed from the assessed-valuation-based criteria which otherwise governed county classifications. The Court explained:

> Prior to the adoption of the 1945 Constitution, there was no constitutional provision with respect to classification of counties or limitation upon the number of classes which the legislature might create. As a result, numerous classifications were made for different purposes. The purpose of [Article VI, § 8] was to simplify and make more effective the organization and operation of the counties. It provides that the provisions for the organization and the classification of counties shall be by *general laws* and that the organization and powers of each class shall be defined by *general laws*.
>
> A "class" as used in this constitutional provision denotes "a group, set, or kind marked by common attributes or a common attribute." To classify is "to group or segregate in classes that have systematic relations usually founded on common properties or characters." *The fundamental concept is that of common attributes, common properties, or common characters*. The constitutional

provision limited the classes of counties to four, and the general assembly provided that the common attribute, property, or character, should be the assessed valuation of the counties subject to classification. . . .

The enactment of subdivision 2 of § 48.030 added a variable that disrupted the common denominator of the classes. It added an element foreign to the concept of assessed valuation in providing that no county of the fourth class should become a county of the third class until the move was approved by the voters of the county. . . . Under it, the progression of a fourth-class county no longer depends upon the general law but on a favorable vote of the county electors. . . . Under the new statutory provision, the common attribute of assessed valuation is no longer controlling. In this instance, Christian County has the assessed valuation of a third-class county but retains the designation and is permitted and required to exercise the powers and be subject to the restrictions of a fourth-class county. This perverts the entire scheme of classification and in effect creates an additional class of counties in violation of § 8, Art. VI, 1945 Constitution.

*Id.* at 734-35 (final emphasis added; citations omitted); *accord*, *Russell v. Callaway Cnty.*, 575 S.W.2d 193, 199 (Mo. 1978) (provision allowing voters to reject an assessed-valuation-based reclassification was unconstitutional, since the relevant statutes provide that "valuation is made the key factor for change in class as well as for initial classification").

As in *Chaffin* and *Russell*, allowing Saline County to be perpetually "grandfathered" into Classification 2, without regard to its assessed valuation, would "add[ ] a variable that [would] disrupt[ ] the common denominator of the classes," and would "add[ ] an element foreign to the concept of assessed valuation" to the classification system. *Chaffin*, 359 S.W.2d at 735. At a minimum, this would create a question concerning the statute's constitutional validity. We can avoid that constitutional question by reading § 48.020.1 to

25

exempt pre-1988 second-class counties only from immediate reclassification as a result of the increases to the valuation thresholds which became effective on August 13, 1988.

The circuit court erred by dismissing Count III of the Assessor's petition, and the judgment must be reversed to that extent. Our partial reversal also has the effect of reinstating Counts IV and V, which sought particular remedies (equitable relief and attorney's fees) based (at least in part) on the Assessor's contention that Saline County had become a third-class county.

## III.

Finally, we address the circuit court's dismissal of Count I of the Assessor's petition, in which she contended that she was entitled to award her employees a paid day off based on their early completion of the year's tax valuations.

The circuit court did not err in dismissing this claim. Under Article III, § 39(3) of the Missouri Constitution,

> The general assembly shall not have power:
>
> . . . .
>
> (3)     To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part[.]

"While the quoted provision is actually a limitation upon the power of the general assembly the practical effect of it is the same as if it applied directly to [cities and counties]. The result is that legislative authority to do the acts prohibited therein could not have been obtained and hence the city was precluded from doing same." *Kizior v. City of St. Joseph*, 329 S.W.2d 605, 609 (Mo. 1959).

26

This Court has previously held that "[v]acation time is compensation" within the meaning of Article III, § 39(3). *Pippin v. City of Springfield*, 596 S.W.2d 770, 774 (Mo. App. S.D. 1980).

The Assessor's petition alleges that she chose to close the Assessor's Office, and compensate her employees for an additional day off, as a non-recurring, one-time benefit based on work her employees had already performed. Thus, the Assessor's petition alleges that, "[o]n or about June 10, the Assessor made the decision to close her office *because the year's tax valuations were completed and no further work could be accomplished*"; the petition also alleges that the Assessor "declared the day off would be compensated" "*[a]s a benefit to the work done* by her employees." (Emphasis added.) These allegations effectively concede that the Assessor awarded the day off to her employees for the work they had already completed. Such a bonus is prohibited by Article III, § 39(3).

The Assessor seeks to liken this case to *Pippin*, 596 S.W.2d 770. In *Pippin*, employees of the City of Springfield accrued paid leave at different rates, based on their years of service: "those employed by the City less than 10 years received a maximum of 2 weeks per year vacation leave; from 10 years to 20 years, 3 weeks; and over 20 years, 4 weeks." *Id*. at 771-72. The City later amended its compensation structure, to allow employees to accrue vacation time at the higher rates with fewer years of seniority. *Id*. at 772-73.

Although the revised compensation structure at issue in *Pippin* gave added effect to employees' prior years of service, the Southern District held that it did not violate Article III, § 39(3). The Court explained:

> While eligibility to receive an extra week of vacation requires a
> certain length of prior service, it is not "extra compensation . . . after

27

service has been rendered". To receive this benefit the employment must continue. Employees who have previously terminated will not receive this additional vacation leave. The reasons for providing additional vacation leave may be to encourage employees to continue to work for the City and to give additional compensation to these experienced employees. It is an "extra" for continuing to work for the City but is not an extra after the service has been rendered. To receive this benefit there must be present service together with the required length of prior service. We hold that the ordinances as interpreted by the trial court do not violate Article III, Section 39(3) of the 1945 Missouri Constitution.

*Id*. at 774-75.

The Assessor's decision to award her employees a single additional paid day off, based on their past work, is plainly distinguishable from the forward-looking change to a compensation structure at issue in *Pippin*. In *Pippin*, the City of Springfield increased employees' *future* compensation: it agreed that employees would accrue additional vacation time *in the future*, based on the work they performed *in the future*. Although the City increased the *rate* at which employees with particular levels of seniority would accrue future vacation time, the employees were not awarded additional vacation time based solely on their prior service. In this case, by contrast, the Assessor awarded her employees a one-time additional vacation day, based solely on the work they had previously completed. No further work was required for employees to be eligible for the additional day off; it was fully earned at the time the Assessor awarded it. This was plainly a "grant [of] extra compensation . . . after service has been rendered," and it accordingly violated Article III, § 39(3) of the Missouri Constitution.

The circuit court did not err in dismissing Count I of the Assessor's Petition.

28

## Conclusion

The judgment of the circuit court is affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings on Counts III through V of the Assessor's petition.

_____
Alok Ahuja, Judge

All concur.